## In re KOHL–HEPP BRICK CO.

(Circuit Court of Appeals, Second Circuit. February 8, 1910.)

### No. 224.

BANKRUPTCY (§ 262*)—SALE OF PROPERTY—SALE FREE FROM LIEN.

A court of bankruptcy has power to order property sold free from a lien claimed thereon, provided the lien, if established, is preserved against the proceeds, and provided, further, that due notice of the sale is given to the lien claimant; but such provision and notice are essential to the validity of the sale.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 365; Dec. Dig. § 262.*]

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the Kohl-Hepp Brick Company, bankrupt. From a certain amendatory order, Anna Day Ward and Henry L. Poinier, as guardians, appeal. Reversed.

The District Court of the Southern District of New York made an order on July 23, 1909, amending nunc pro tunc an order of February 23, 1909, so as to provide that certain real and personal property of the bankrupt be sold free and clear of any lien of appellants, as guardians of William R. Ward, an alleged incompetent, and free and clear of any and all other lien or claims thereto or thereon, except a specified mortgage and a specified mechanic's lien reduced to judgment.

Joseph Duffy, for appellants.
R. R. Howard and Guthrie B. Plante, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. This record as presented is so imperfect and so inartificially prepared that it is very difficult to marshal the facts in proper chronological order. It may be assumed that at some time, by some proper authority, appellants were appointed guardians of William R. Ward, an incompetent, and it may further be assumed that they were so appointed prior to November 13, 1908. Their contention appears to be that $16,100 was obtained by some one from Ward without consideration and invested in the property, which was subsequently sold, and that they can trace the money into the property. The title to that property, a brick plant, at the time of the bankruptcy, was in the bankrupt.

Adjudication of bankruptcy was had November 12, 1907, and after various efforts to make the plant productive a meeting of creditors was called for November 5, 1908, to consider the propriety of selling it. After a long discussion adjournment was had to November 12, 1908, when it was decided to sell the property at public auction. On November 13th the trustees received a letter from the attorneys of the alleged guardians protesting against any sale of the property, except subject to a lien in their favor for $16,100, by reason of moneys advanced by the alleged lunatic. Such a claim thus advanced did not operate to prevent the court from selling the property free of that particular lien, provided the lien, if subsequently established, should apply to the proceeds, and provided, further, that timely notice of the time and place were given to the persons who claimed such lien, so that they might have an opportunity to attend and by bidding or otherwise protect their interest. Collier on Bankruptcy (7th Ed.) pp. 838, 839. We have searched the record in vain to find that any such notice was ever given to them. Notices were given to every creditor who appeared in the bankrupt's schedule, or who had filed a claim in the office of the referee; but appellants were not enumerated in the schedule, nor did they file any claim with the referee. They elected to rely on their alleged lien against the res.

The property was offered at auction on January 14, 1909, and a bid of $20,500, the highest one, accepted by the trustees, subject to the approval of the court. Thereafter, on notice to all creditors and lienors other than appellants, the question of confirming the sale was brought on for hearing before the referee on January 20, 1909, such hearing being continued on February 3d, 10th, 15th, 17th, and 19th. An offer by one Buell to purchase the property for $31,287.67 being then made, the successful auction bidder waived his bid and an order was made February 23d directing sale of the property for the last-named sum. The order sought to be reviewed amends this order of February 23d, so as to provide expressly that the property be sold free and clear of appellants' alleged lien, which, if any, shall be transferred to the proceeds. It was admitted on the argument that the trustees did not give appellants notice of any of these proceedings, because

they "ignored" their claim, considering it to be frivolous. On the record, disregarding contributions to the facts advanced in counsel's argument, it does seem rather slim; but possibly, when they have their day in court, appellants may be able to make something out of it. That is not now the question. Concededly before the sale at auction, and the subsequent sale, when, the bid being rejected, the referee approved a private sale at a higher price, the trustees were advised that a lien on the property was claimed, and neither they nor the court could shift the lien from property to proceeds without such notice of proposed sale of the property free from incumbrances as would enable the appellants to protect their interest by bidding, if they so desired.

· Nor do we find in the record any action of appellants which would constitute a waiver or estoppel and preclude them from asserting that by reason of failure to give them proper notice their lien has not been displaced. They appeared by attorney at the hearing on February 3d and filed a notice to all "whom it may concern" that they claimed a lien for $16,100 and were about to enforce it by suit. It is stated in the brief that they also appeared by attorney on February 10th; but there is nothing to show that they were present or represented when the first bid was withdrawn and the higher offer accepted. The original order for sale November 30, 1908, is not in the printed record; but we have obtained it from the referee. It provides that the property—

"shall be sold by the trustees free and clear from any liens and incumbrances, and that upon such sale thereof the said trustees shall take the proceeds therefrom into their possession, and after first paying therefrom the expenses of such sale, including auctioneer's fees and the reasonable charges for advertising and notices of sale and insurance to the date of such sale, shall pay and dispose of the same in the following manner and to the following named persons and corporations in the order of priority hereinafter stated; the amounts due those hereinafter named, and for which such persons and corporations have or claim to have liens against said real property, being hereby declared liens against the proceeds accruing from any such sale and entitled to payment as aforesaid in so far as such proceeds shall be sufficient therefor: (1) P. F. McCutcheon, tax collector of Sayreville township, $1,121.12, with interest thereon to the date of payment. (2) Conrad W. Kuhlthau, $9,000, with interest at the rate of 5 per cent. from February 2, 1907, to the date of payment. (3) Manhattan Trust Company, holder of receiver's certificates issued under and pursuant to order of this court, $3,000, with interest thereon from December 1, 1908, to the date of payment. (4) American Blower Company, amount of mechanic's lien reduced to judgment pursuant to order of court $8,434.75. (5) Nathan W. Clayton and Elbert C. Pierson, partners as Clayton & Pierson, $2,194.96."

This order was made after appellants had given notice of their alleged lien, but it makes no provision for the imposition of such lien on the proceeds of sale. Under the authorities such provisions are essential. Collier on Bankruptcy, supra. The order is fairly open to the construction that the general phrase "free and clear from any liens and incumbrances" covers only such liens as are by its terms imposed upon the proceeds, because the court had power to displace existing liens only to the extent to which they were thus imposed upon the proceeds. With this order before them, if it be assumed that it was known to them—evidently it was not served on them—appellants might reasonably suppose, that whatever sale might thereafter take place would not be free from their lien, since no provision was made to trans-

fer it to the proceeds. Until notice to the contrary was given them they might fairly rely on such supposition.

The order of February 23d, confirming the sale to Buell, says nothing about the sale being free and clear of liens and incumbrances. Manifestly that is the reason why the subsequent order of July 23d undertook to amend it by the insertion of such provisions. It does state that the sale is made upon the terms and conditions stated in a contract between Buell and the trustees; but it nowhere appears that appellants were informed as to the terms of such contract. Moreover, the contract itself makes no provision for imposing any displaced lien upon the proceeds. It also recites that an order was duly made and entered directing the sale of the property "free and clear of incumbrances and upon certain terms and conditions in said order stated and set forth." Manifestly this is the order of November 30th, which, as we have seen, contained no provisions as to appellants' lien, although all parties were then advised that such lien was asserted against the property. Inspection of the contract would not have advised appellants that the terms and conditions of the later sale, so far as liens and incumbrances were concerned, were in any way different from those contained in the order of November 30th.

It is unfortunate to have to reverse the order at this late stage of the proceedings; but the power to displace liens is a drastic one, and should be exercised only with scrupulous attention to secure the lienor specific notice and full opportunity to protect his interests. If, however, the price at which the property was sold is fair and reasonable, a resale after proper notice and with sufficient provisions to impose all displaced liens upon the proceeds will probably result in a transfer to the same individual for the same price. Should a higher price be realized, no one can reasonably complain.

The order is reversed.