McRaney v. Riley et al.

[91 South. 399. No. 22056.]

1. Bankruptcy. *Referee authorized to decree a sale of bankrupt's real estate free from liens.*

   A referee in bankruptcy, to whom a bankruptcy cause has been referred by the court in pursuance of law, has authority to decree a sale, on a proper showing of the necessity therefor, of any part of the estate of the bankrupt, including real estate, in the custody of the trustee in bankruptcy, free from liens of creditors, and transfer their liens to the proceeds of such sale.

2. Bankruptcy. *Trustee vested with title and custody of bankrupt's entire estate; bankruptcy court acquires jurisdiction of all bankrupt's assets with authority to adjudicate conflicting claims.*

By virtue of section 70 of the Bankrupt Act (U. S. Comp. St., section 9654), upon adjudication of bankruptcy, and appointment of a trustee as provided by the Bankrupt Act, such trustee becomes vested with the title and custody of the entire estate of the bankrupt of every kind, subject to his debts, for the purpose of administration; and the bankrupt court is authorized by the act to adjudicate in said cause all conflicting claims and liens of creditors of the bankrupt thereto; and the bankrupt court thereby acquires jurisdiction of all the assets of the bankrupt, except such as are in possession of adversary claimants, by reason whereof the trustee fails to get possession thereof.

3. BANKRUPTCY. *Bankrupt's land may be sold free from creditor's liens after ten days' notice to creditors.*

Under the provison of section 58 of the Bankrupt Act (U. S. Comp. St., section 9642), an application by the trustee for the sale of the property of the bankrupt in his custody, free from the liens of creditors, is authorized to be made on not less than ten days' notice to the creditors of such bankrupt, including the creditors having such liens, given by mail to the respective addresses of such creditors as they appear on the schedule of such bankrupt.

4. BANKRUPTCY. *Constitutional law. Bankruptcy Act, authorizing sale of bankrupt's property free from liens on due notice, not violative of due process clause of constitution.*

Section 58 of the Bankrupt Act (U. S. Comp. St., section 9642), which authorizes the sale of the property of the bankrupt in the custody of the trustee free from liens of creditors on at least ten days' notice by mail to the respective addresses of such creditors as they appear in the schedules of the bankrupt, does not violate the due process clause of the Constitution of the United States, in that such a sale of the property of the bankrupt under such notice amounts to the taking of the property of such lien creditors without due process of law.

5. BANKRUPTCY. *Court may sell bankrupt estate in custody of trustee on notice to creditors by mail, though notice amounts only to constructive notice.*

Where the bankrupt court through a trustee in bankruptcy has acquired the title and custody of the estate of the bankrupt, and by virtue thereof under the bankrupt law has acquired jurisdiction of such estate, the bankrupt court is authorized on a proper showing to sell the bankrupt estate, or any part of it, so in the custody of the trustee, free from the liens of creditors, and transfer such liens to the proceeds of such sale, on the notice

by mail provided for by section 58 of said act, although such notice amounts only to constructive notice, because, where a court has acquired jurisdiction of property, it may decree a sale thereof on constructive notice to adverse claimants and creditors interested therein; and such notice and decreé of sale in pursuance thereof is not violative of the due process clause of the federal Constitution.

APPEAL from chancery court of Covington county.

HON. D. M. RUSSELL, Chancellor.

Bill by O. C. McRaney against J. H. Riley and others. Decree of dismissal, and plaintiff appeals. Reversed and rendered.

*Chambers & Trenholm,* for appellant.

Appellees, in their brief, page 8, submit the following proposition: "The order of the referee in bankruptcy directing the bankrupt's property to be sold clear of the appellee's lien was void because: (a) the referee had no jurisdiction of the subject-matter, and (b) the referee acquired no jurisdiction over the appellee."

We respectfully submit that appellee is wrong on both of these propositions. Attention is called to the text of Collier on Bankruptcy in support of the assertion that the referee had no jurisdiction of the subject-matter and, that the United States supreme court has never passed upon the question. The text of Collier is directly opposed to the position taken by appellee. While it is true the United States supreme court has never directly passed upon the question, the circuit court of appeals has. Matter of New England Piano Co., C. C. A. 1st Cir., 9 Am. B. R. 767; 122 Fed. 937.

Appellee cites not a single case denying the authority of the referee to make the order for sale free from liens, and we submit that the decisions of the Federal courts cited by Mr. Collier in support of the authority of the referee will be followed by this court, the matter being for determination by the Federal and not by the state courts.

Upon the proposition that the referee acquired no juris-
diction over appellee Riley, we simply remind the court
of the fact that Riley had filed a claim in this bankruptcy
proceeding, and renew our citation to *Wisewall* v. *Camp-
bell*, 193 U. S. 347; 23 L. Ed. 923. Appellee's brief, page
24, discusses the forms, rules, etc., to be followed in the
bankruptcy court in matters of this kind, thus inferentially
admitting the authority of the bankruptcy, and then call
attention to form 196, petition for sale free and clear of
liens, and to the fact that the petition is required to be veri-
fied. A casual examination of form 196 will disclose that it
is not one of the forms adopted by the United States su-
preme court, its forms being 63 in number, only, and num-
bered from 1 to 63. Form 196 is by Hagar & Alexander. See
Hagar & Alexander's Bankruptcy Forms, Annotated (2
Ed.), form 248, p. 385. Therefore, said form has not the
force of law, attributed to it by appellees. Nor does a
single annotation appear in Hagar & Alexander showing
that said form has ever been adopted by the courts.

But we say, furthermore, that the question is : was Riley
in the bankruptcy court? If he was not, then what is the
use of considering the form or substance of its proceed-
ings? If he was, then that court was the proper place to
raise those questions. *Nashville Sadlery Co.* v. *Green*
(Miss.), 89 So. 816.

Rule 37, of the supreme court rules relating to
bankruptcy (being general order) and Equity Rule XV,
are not applicable to the controversy, because the
petition and order for sale of property free from liens
was not a "proceeding in equity (or in law) instituted for
the purpose of carrying into effect the provisions of the
act," but was a part of the due and usual administration
of the proceeding in bankruptcy, controlled by the act,
general orders and forms applicable to such a proceeding.
But, we again say that Riley was in court when he filed
his claim, and was bound to take notice of all that went
on affecting his interests in the estate under administra-

tion, and, if the form and substance of the proceedings were irregular, to these object.

Appellee contends that if jurisdiction of Riley was obtained by mailing the notice under section 58, of the Bankruptcy Law, so that the sale in question could be made, then section 70 of said act, and particularly subdivision B thereof is violative of the declaration of the federal constitution that no person shall be deprived of life, liberty or property without due process of law. What becomes of the claims of creditors when a bankrupt is discharged? What notice is provided by the act to be given creditors, other than by mail? The constitutionality of the Bankruptcy Act of 1898, and amendments has been many times attacked as being unconstitutional, and on many grounds, but we do not know of a single attack that was successful. By section 17 a bankrupt, when discharged, is released from all of his provable debts, except certain stated kinds. By section 58 the only notice required to be given to creditors of the bankruptcy and the application for discharge is by mail. The constitutionality of the act was therefore attacked by Messrs. Green & Green, of the Jackson Bar, in the United States supreme court upon the very ground that it did not provide for notice as required by due process of law. What was the result? That was in 1902. The act is still in force. *Hanover National Bank* v. *Moyse,* 186 U. S. 181, 46 L. Ed. 1113, 8 Am. B. R. 1.

We respectfully submit that the decree of the court below should be reversed and that a decree should be entered here as prayed for in the original bill.

*R. H. Thompson,* for appellant.

First: Did the bankruptcy court obtain jurisdiction of the land? Under the Mississippi Statute, Code of 1906, section 2779, to which we have called attention in our statement of the facts, A. V. Easterling, afterwards the bankrupt, was the owner of the land in suit.

A court of bankruptcy acquires jurisdiction of all the property, including the land of the bankrupt. The bankruptcy law throughout its entire scope provides and its objects and purposes are that the bankruptcy court shall administer all of the property of the bankrupt, except perhaps his exempt property, and is given full jurisdiction over all of his property; it requires the bankrupt to schedule all of his property, even his exempt property, thus enabling the court to pass upon the validity of his claim to any property as being exempt from liability to his creditors. It empowers the bankruptcy court to cause the estates of the bankrupts (the whole of them) to be collected, reduced to money and distributed and to determine controversies in relation thereto. It follows, we think, beyond controversy that the bankruptcy court acquired jurisdiction of the land and had the right to administer it, including the right to have it sold subject to or free from liens and its proceeds applied to the payment of the bankrupt's debts, secured or unsecured, according to the respective rights of creditors among themselves.

Second: Did the bankruptcy court acquire jurisdiction of the person of defendant Riley? We think it did for the reasons we proceed to state: (a) Riley, was or claimed to be, a creditor of Easterling, the bankrupt. If he were not a creditor he has no debt, his deed of trust is void and the decree of the chancery court under review is fatally erroneous and must be reversed. If he were a creditor of the bankrupt at the time the bankruptcy proceedings were begun, then he cannot complain of us treating him as having been such a creditor, then he became a party to the bankruptcy proceedings. (b) Riley, as a secured creditor, was a party to the proceedings in the bankruptcy court. He knew, for he was charged by law with knowledge, that his alleged secured debt would have to be scheduled by the bankrupt and that the land described in the deed of trust would have to be rendered by the bankrupt to the bankruptcy court and that the bankruptcy court acquired juris-

diction to administer all of the bankrupt's property, including the land now in controversy in the case at bar.

Again, and we think perfectly conclusive, Riley was actually served with notice of the petition of the trustee to sell the land involved in the suit at bar, freed from liens. Collier on Bankruptcy (Twelfth Edition), p. 836.

It can be asserted with confidence, we feel assured, if the bankruptcy law required any notice additional to the notice previously given by which Riley was brought into court and made a party to the bankruptcy proceedings, no other notice was required to be given of the trustee's petition to sell the land free from liens than the notice actually given by mail and actually received by Riley.

We must not allow ourselves to be confused by a conception that notice under the Federal statute, the Bankruptcy Act, is the same as notice required under state law; an error into which the chancery court probably fell.

It was and is perfectly competent for Congress to prescribe what is and shall be legal and efficient notice in bankruptcy proceedings. Congress is expressly authorized and given plenary power, by Constitution of the United States, Act 1, section 8, clause 4, to establish . . . uniform laws on the subject of bankruptcy throughout the United States. State statutes on the subject of process and notice in judicial proceedings are not uniform; bankruptcy laws are required to be uniform throughout the United States, and Congress, therefore, was under the necessity of enacting its own laws touching process and notices in bankruptcy proceedings so as to make them conform to the requirements of the National Constitution. If Congress had failed to enact such laws they would fall far short of being uniform throughout the United States. Further, a notice was also given Riley by mail informing him of the time, place and terms of the sale which the trustee in bankruptcy was ordered by the court to make, informing him that the land involved in the suit would be sold free from liens.

The trustee duly reported the sale to the court, whereupon, the court on August 31, 1916, gave Riley and his attorneys notice by mail informing them of the report of the sale and citing them to appear before the referee at his office in Jackson at 2 P. M., September 5, 1916, to show cause why the sale should not be confirmed. This notice was duly issued.

On September 5, 1916, the sale was duly confirmed and the trustee directed to execute a deed to Welch, the purchaser of the land. The decree confirming the sale conclusively adjudged that Riley had been duly notified to contest the confirmation of the sale. This judgment of the bankruptcy court is not subject, nor is any part of its record subject, to a collateral attack, and yet the defense of the case at bar is based wholly upon a collateral attack on the judgments and records of the bankruptcy court and was successfully made in the chancery court in the face of the law on the subject.

It was perfectly competent for Congress to provide that the mailing of process and notices in bankruptcy proceedings should constitute sufficient legal notice to the party to whom directed. The notices in this case were just as effectual when issued, that is when mailed, as in state process when duly served by the sheriff and returned with an endorsement showing that it had been personally served by the sheriff upon the person of the party he was commanded to serve.

Touching the decree confirming the sale of the land we have further to say: A judicial sale is not void for want of confirmation. Confirmation may be (a) by act of the parties or (b) by the lapse of time. *Gowen* v. *Jones,* 10 Smed. & M. 164; *Rebus* v. *Hayden,* 43 Miss. 614.

Was the bankruptcy court without jurisdiction (a) to order a sale of the land free from incumbrances, or (b) to confirm the sale, or (c) to decree the invalidity of Riley's alleged debt, secured formally by the deed of trust.

The questions propounded are questions of Federal law and the decisions of the Federal courts are controlling.

(A) The cases are believed to be uniform in determining that the sale of property free from incumbrances can be decreed and authorized by the referee as well as by the United States district court in *In re Waterloo Organ Co.,* 118 Fed. 904; S. C. 9 Am. B. Rept's 427; *Citizens Saving Bank* v. *Paducah,* 167 S. W. 870, S. C. 32 Am. B. Rep'ts 852, and other cases cited in Collier on Bankruptcy (Twelfth edition), page 1171. Such a sale can be ordered without first determining either the validity or the amount of the lien. *In Re Littlefield,* 155 Fed. 838; S. C. 19 Am. B. Rept's 18.

A fund derived from the sale of property free from liens will stand as substitute for the property sold, and will be held by the trustee in bankruptcy (as was done in the case at bar) for the benefit of those holding *bona-fide* claims and liens to the extent of their respective interests. *Matter of National Boat, etc., Co.,* 216 Fed. 208; S. C. 33 Am. B. Rep'ts 154. That Riley failed to claim the fund and permitted his debt after the sale of the land to be adjudged invalid had no effect upon the validity of the sale previously made. The truth is, the only notice in the case at bar of any legal significance, is the one Riley admits to have received and that notice was ample and personal.

The supreme court of the United States in the case of *Weidhorn* v. *Levy,* 253 U. S. 268, held (beginning near bottom page 277), if the property were in the custody of the bankrupt court or its officer, any controversy raised by an adverse claimant setting up a title to or lien upon it might be determined upon summary proceedings in the bankruptcy court and would fall within the jurisdiction of the referee, citing and approving two previous decisions of that court so determining *White* v. *Schloerb,* 178 U. S. 542, 546; *Mueller* v. *Nugent,* 184 U. S. 1, 13.

The authorities cited seem to us to establish conclusively that the referee in bankruptcy had jurisdiction to decree the sale of the land free from incumbrances. The court is asked to reverse the final decree of the chancery court and render a final decree in complainant's favor,

cancelling the deed of trust as prayed for in the bill of complaint.

*E. L. Dent* and *Watkins, Watkins & Eager,* for appellee.

Point 1: The order of the referee in bankruptcy directing the bankrupt's property to be sold clear of the appellee's lien was void because: '(a) the referee had no jurisdiction of the subject-matter; and (b) the referee acquired no jurisdiction over the appellee.

(A) The referee in bankruptcy was without jurisdiction of the subject-matter. The Bankruptcy Act of 1867 contained specific provision authorizing the referee or the judge of the United States court to sell property free of liens. The present act contains no such provision, the same being as follows: "All real and personal property belonging to bankrupt estates shall be appraised by three disinterested appraisers; they shall be appointed by, and report to, the court. Real and personal property shall, when practicable, be sold subject to the approval of the court; it shall not be sold otherwise than subject to the approval of the court for less than seventy-five per centum of its appraised value."

Mr. Collier, in the 12th Edition of his work on Bankruptcy, page 1171, announces the following rule: "Sales free of incumbrances were authorized by the Statute of 1867. The present law has no such provision. This has cast doubt on the power of the court to authorize such a sale. The cases are quite uniform, however, in declaring that such sales can be authorized, and by the referee as well as by the judge."

The author refers to the decision of various referees in bankruptcy, judges of district courts, and to a few opinions taken from circuit courts of appeals of the United States. However, the question has never been definitely settled by the supreme court of the United States, and therefore still remains in doubt.

(B) This case, however, involves more than the power and authority of the referee in bankruptcy to make an order directing the property to be sold free of incumbrances. This case involves the determination as to what notice is required to be given to the mortgagee before his mortgage shall be foreclosed, converted into cash, and he himself postponed to the proceeds of the sale instead of the property.

The action is one in the nature of the foreclosure of a mortgage. The mortgagee has a mortgage or deed of trust upon certain property. Upon default being made in the payment of the indebtedness secured, he has a right to sell the same in accordance with the terms of the instrument. Under the settled law, the mortgagee would have a right at the sale to bid the land in for the amount of his debt and would not be required to deposit with the trustee the amount of his bid except as the same might exceed the amount of his debt. It would only be necessary for him to receipt to the trustee for an amount equal to the debt secured by the deed of trust. The proceedings in question, however, contemplate the foreclosure of the property, the deprivation of the mortgagee of his valuable and important rights in respect to the foreclosure of the property, the proceedings contemplate the sale of the property in bulk and the deposit of the proceeds in court, so that if the mortgagee should purchase at the sale in order to protect his debt, he would have to deposit the cash amount of his bid just as any other purchaser would, and his rights, if any, would have to be against the proceeds of the sale, deposited in court. The question presented in this case involves not only the jurisdiction of the referee in bankruptcy over the subject-matter, which is a very important question, but extends much further, and involves an inquiry and determination of what is due process to the mortgagee before he may be deprived of the valuable rights incident to his contract with the mortgagor.

It must be borne in mind that a proceeding of this character must be of an adversary nature. The trustee in

bankruptcy is the complainant, and the mortgagee a necessary party defendant, since his rights are to be affected and dealt with under the proceedings. In this connection, reference must be had to article 5 of the Amendments to the Constitution of the United States, which is in the following language: "No person shall be deprived of life, liberty or property without due process of law."

It is held that article 5 of the Amendments to the Constitution of the United States is a limitation upon federal action, and has no reference to the activities of the states; *Barren* v. *City of Baltimore,* 32 U. S. 243, 8 L. Ed. 672; *Ohio ex rel. Lloyd* v. *Dollison,* 194 U. S. 445, 48 L. Ed. 672; *Jack* v. *Kansas,* 199 U. S. 372, 50 L. Ed. 234, 4 Ann Cas. 689; *Hunter* v. *Pittsburgh,* 207 U. S. 161, 52 L. Ed. 151.

The Fourteenth Amendment to the Constitution of the United States limits and controls the action of the states, and the Fifth Amendment limits and controls federal action. *Dexter Horton & Company* v. *Saward,* 84 Fed. 296; *Galpin* v. *Page, Pennoyer* v. *Neff,* and *Settlemier* v. *Sullivan; Ochoa* v. *Morales,* 230 U. S. 138, 57 L. Ed. 1427; *Webster* v. *Reid,* 11 How. 437, 13 L. Ed., 761; *John Denn* v. *Hoboken Land Company,* 15 L. Ed. 372.

Now, in the case at bar, a general notice, partly printed and partly typewritten, directed to nobody, contained upon a postal card which itself was directed to the appellee, which in the most general terms stated that the trustee in bankruptcy had filed a petition to sell the real estate of the bankrupt free of incumbrances and that a hearing would be had thereupon at Jackson, Mississippi, upon the 8th day of August, 1916, which postal card was not personally served upon the appellee and which he may or may not have received, constitutes the basis for due process in this cause. Learned counsel for the appellant states that they have not been able to ascertain the exact ground upon which the chancellor who decided this case in the court below put his decision. We take this occasion to inform the court that the chancellor said that he would not decide whether Mr. Riley got the notice or not; that that

question was immaterial, that the property rights involved were too serious and important to be divested by a proceeding so informal, and that in his judgment the mere mailing of a postal card directed to no one, though addressed to the appellee, which he may or may not have gotten, was not due notice and did not constitute due process within the meaning of the Constitution. The position of the learned chancellor deciding this case was that for some purposes such as a notice might be sufficient, but that the appellee had important and serious property rights in respect to the property in question, of which he was sought to be deprived by these proceedings, and that he was therefore, before he could be deprived of his property rights in the premises, entitled to formal notice in proportion to the rights involved in the case; that he may or may not have received the postal card directed to him.

We now propose to direct the attention of the court to the authorities supporting the foregoing view. The leading case is that of *Ray* v. *Norsworthy*, 23 Wall. 128, 23 L. Ed. 116; *Foster* v. *Ames*, 1 Low, 316; *Williard* v. *Brigham*, 25 La. Ann. 501; *Hays* v. *Pickett*, 92 U. S. 116, 23 L. Ed. 1008; *Factors' & Traders' Insurance Co.* v. *Murphy*, 111 U. U. 738, 28 L. Ed. 582; *Ray* v. *Norsworthy*, 23 Wall. 128, 90 U. S. 23, 116; *Cain* v. *Sheets*, 77 Ala. 492; *Ray* v. *Norsworthy*, 23 Wall. 128.

This principle was settled in the *Tenn. & Coosa R. R. Co.* v. *East Ala. Ry. Co.*, 75 Ala. 516, and is otherwise well sustained by authority upon fundamental principles. *Ray* v. *Norsworthy, supra; In Re Kinsey,* C. C. A. 6th Circuit, 184 Fed. 694; *Lake Shore & M. S. Ry. Co.* v. *Felton,* 103 Fed. 227, 43 C. C. A. 189; *Horn* v. *Pere Marq. Ry. Co.* (C. C.), 151 Fed. 626; *City of Shelbyville* v. *Glover,* 184 Fed. 234 (decided by this court) ; *In re Kohl Brick Company,* C. C. A., 7th Circuit, 176 Fed. 340; *In re Saxton Furnace Company,* D. C. (Pa.), 136 Fed. 697; *Platville Foundry & Machine Company,* D. C. (Wis.) 147 Fed. 828; *In re Saxton Furnace Co.,* 14 Am. Bankr. Rep. 483, 136 Fed. 697; *In re Worland,* 1 Am. Bankr. Rep. 450, 92 Fed.

893; *Matter of New England Piano Co.,* 9 Am. Bankr. Rep. 767, 122 Fed. 937, 59 C. C. A. 461; *In re Sanborn,* 3 Am. Bankr. Rep. 54, 96 Fed. 551. *Gantt* v. *Jones,* C. C. A. 4th Circuit, 272 Fed. 117, 7 C. J. 231, sec. 359, note.

First, in order to constitute due process, Congress had provided the kind of procedure to be followed in such cases. Section 30 of the Bankrupt Act contains the following provision: "Rules, forms and orders. All necessary rules, forms, and orders as to procedure and for carrying this act into force and effect shall be prescribed, and may be amended from time to time, by the supreme court of the United States."

The supreme court of the United States, in pursuance of this authority, did prepare rules governing such proceedings, which are known as General Orders. They will be found in Collier on Bankruptcy (12 Ed. pages 1189-1223. General Order 38, dealing with forms, is in the following language: "The several forms annexed to this General Order shall be observed and used, with such alterations as may be necessary to suit the circumstances of any particular case."

The forms were duly prepared and will be found in Collier on Bankruptcy (12 Ed.), page 1225-1451. It has been well settled that these rules and forms, having been adopted in pursuance of an act of Congress, have the force of law. *In re Gerber* (C. C. A.), 186 Fed. 693; *Sabin* v. *Blake,* 223 Fed. 501; *Falk* v. *Stiner* (C. C. A.), 165 Fed. 861; *Mahoney* v. *Ward* (D. C.), 100 Fed. 278, authorities on this question could be cited without number, but the foregoing are sufficient to establish the general rule.

The supreme court of the United States having been authorized to adopt rules and forms, and having adopted them, we will now direct the attention of the court to what rules and forms have been adopted in order to provide the appellee, and other persons similarly situated, with due process. We first direct the attention of the court to the petition which was required to be filed, and we direct the especial attention of the court to the fact that the ob-

servance of these rules in mandatory; the word "shall" and not the word "may," is used.  The rule in respect to the form of the petition is Form 196, in respect to which we have the following observations to make:  "(a)  The petition is required to be verified.  The petition filed in this case was not verified.  (b)  The mortgage is required .to be set out with great particularity, as well as the legality, or the imperfections thereof, if any, and the necessities. for selling the property are likewise specifically to be averred.  (c)  The petition shall conclude with a prayer that the mortgagee be made a party thereto, and that he be required to show cause, upon a fixed date, why the property should not be sold free of incumbrances.  In other words, the prayer of the petition is that a rule to show cause be made and served upon the mortgagee."

The next question is, what provision is there for the service of such notice; that is to say, upon whom shall the same be served?  The judges of the supreme court of the United States knew that, under such proceedings, persons situated as the mortgagee in this case was situated might be deprived of their property, and that the proceeding was a serious one, and accordingly, Rule 4 contained the following provision in respect to the person upon whom the process should be served:  "Notices and orders which are not, by the act or by these general orders, required to be served on the party personally may be served upon his attorney."

Now in this case the evidence is undisputed that, in respect to this matter, the appellee had no attorney, so that the rules of the court imperatively required that the process or notice should be served upon the appellee personally, which of course was not done.

Next, by whom should process be served?  The judges of the Supreme court of the United States, in pursuance of the mandate given to them by congress, were not willing that the rights of the appellee, and other persons similarly situated, should be entrusted to casual information or neighborhood gossip or informal notice received or not re-

ceived, as the case might be. We find that these great judges were careful to see that the rules and forms and the service thereof constituted due process. Rule 37 contains the following provision: "In the proceedings in equity, instituted for the purpose of carrying into effect the provisions of the act, or for enforcing the rights and remedies given by it the rules of equity practice established by the supreme court of the United States shall be followed as nearly as may be. In proceedings at law, instituted for the same purpose, the practice and procedure in cases at law shall be followed as nearly as may be. But .the judge may, by special order in any case, vary the time allowed for return of process, for appearance and pleading, and for taking testimony and publication, and may otherwise modify the rules for the preparation of any particular case so as to facilitate a speedy hearing."

It is settled beyond peradventure of question that proceedings in bankruptcy are equitable in nature, and that the rules of equity practice apply. *In re Waugh* (C. C. A.), 133 Fed. 281; *Shutle* v. *Patterson* (C. C. A.), 147 Fed. 509; *In re Docker-Foster Co.,* 123 Fed. 190; *Ex parte Steele,* 162 Fed. 694. And when we turn to Equity Rules upon the question of service, we find that Rule 15, providing by whom process, shall be served, is as follows (found in Collier on Bankruptcy (12 Ed.), page 1455): "Rule XV— Process, by whom served. The service of all process, mesne and final, shall be by the marshal of the district, or his deputy, or by some other person specially appointed by the court or judge for that purpose, and not otherwise. In the latter case, the person serving the process shall make affidavit thereof."

In other words, process could have been served by the marshal, or the referee in bankruptcy could have authorized the trustee in bankruptcy or any other person to serve the process. To sum up the situation, we find this: "that even if the jurisdiction of the referee to entertain a proceedings of this character be conceded, and that a plenary suit was not required, be conceded, still the mere

fact that the referee in bankruptcy had jurisdiction of the subject-matter did not give him jurisdiction of the person of the mortgagee, which was necessary, except upon such notice as constituted due process."

(C)   Attorneys for the appellant take the position that the service in said cause was provided by section 58 of the Bankrupt Law, and that that statute was complied with. Paragraph (a) of section 58 of the Bankrupt Act is in the following language:   "Creditors shall have at least ten days' notice by mail, to their respective addresses as they appear in the list of creditors of the bankrupt, or as afterwards filed with the papers in the case by the creditors, unless they waive notice in writing, of (1) all examinations of the bankrupt; (2) all hearings upon applications for the confirmation of compositions; (3) all meetings of creditors; (4) all proposed sales of property; (5) the declaration and time of payment of dividends; (6) the filing of the final accounts of the trustee, and the time when and the place where they will be examined and passed upon; (7) the proposed compromise of any controversy; (8) the proposed dismissal of the proceedings; and (9) there shall be thirty days' notice of all applications for discharge of bankrupts."

In view of the preceding argument herein, it is perfectly apparent, and no further argument is necessary to show, that this section had no reference to the method of obtaining jurisdiction over lien claimants and mortgagees, but was the method adopted by Congress for notifying schedule creditors of the proceedings from time to time in the bankruptcy court.

(D)   Counsel for the appellant seem to be satisfied to rest their contention upon the announcement of the rule of law that where the bankrupt court has taken possession of property that all controversies in respect thereto may be disposed of in a summary proceeding before the referee and that a plenary suit is not necessary.   The supreme court of the United States has decided a number of times that where the bankrupt court has taken possession of the

property of the bankrupt, no plenary suit is necessary, and that all adverse controversies may be determined in a plenary proceeding, and if that rule is applicable to the proceedings to sell mortgaged property of the bankrupt free from liens, then it is applicable to this case to the extent of establishing that the referee in bankruptcy had jurisdiction of the subject-matter. But these cases are not authority for the proposition that due notice, as provided for by the Constitution of the United States, is not requisite. In ither words, the mere fact that a plenary suit is not necessary and that the referee may summarily or otherwise dispose of the controversy, does not dispense with the necessity for due notice to the parties having adverse interests. *Mueller* v. *Nugent,* 184 U. S. 1.

(H) It is suggested in the brief of counsel for appellant that appellee was not entitled to any notice because he had already proved a claim, and was before the court for all purposes. Appellant's counsel cite the case of *Wiscwall* v. *Campbell,* 193 U. S. 347, 23 L. Ed. 923. That case, however, dealt with the question of the appellate jurisdiction of the supreme court of the United States, and did not in the remotest sense, involve the questions suggested by counsel.

We, therefore, respectfully submit: (1) That the referee in bankruptcy was without jurisdiction of the subject-matter. A sale of the mortgaged property could only be had under the bankrupt statute by a plenary suit filed for such purposes. (2) If mistaken in the foregoing position, we state that jurisdiction was never obtained of the person of the bankrupt, because service by mailing notice was not sufficient under the federal statutes in reference to bankruptcy, whether the notice was received by the appellee or not. (3) If the statutes of the United States in respect to bankruptcy authorized the referee to sell the property in question free of incumbrance by merely mailing notice under section 58 of the act to the appellee, then section 70 of the bankrupt act, and every part thereof, and especially paragraph (b) thereof is in violation of the Fifth

Amendment to the Constitution of the United States, which provides that no person shall be deprived of life, liberty or property without due process of law, and, for the same reason, the orders, decrees and proceedings had by and before the referee in bankruptcy in respect thereto were null and void. (4) We respectfully submit that the decree of the court below was correct, and should be affirmed.

Anderson, J., delivered the opinion of the court.

Appellant, O. C. McRaney, filed his bill in the chancery court of Covington county against appellee J. H. Riley, in which he alleged that he was the true owner of lot 12, in block 5, in the city of Collins in said county, and that appellee held a pretended deed of trust against said property which was of no validity, and seeking to cancel the same as a cloud upon his title. Appellee answered the bill, denying its material allegations, and there was a trial on bill, answer, and proofs, and a decree dismissing appellant's bill from which he prosecutes this appeal.

Both appellant and appellee claimed title through a common source, A. V. Easterling. In 1916 A. V. Easterling was adjudged a bankrupt by the federal district court for the southern district of this state. At that time he owned the property here in question, and it therefore constituted part of his assets as a bankrupt. Shortly before his bankruptcy said Easterling executed the deed of trust sought to be canceled to secure an indebtedness to appellee of three thousand dollars on the land in question, which is a lot and storehouse thereon in the city of Collins where said Easterling was doing a mercantile business at the time of his failure.

In the progress of the administration of the estate of said bankrupt said lot was by decree of the referee in said bankruptcy matter sold by the trustee therein, and purchased by one Welch at one thousand and fifty dollars, through whom appellant claims title by mesne conveyances.

This sale was confirmed by the referee, and the money paid into court, and a deed made to the purchaser by the trustee in obedience to an order of the referee. The sale of said lot was made free of liens, the lien of appellee's deed of trust being transferred to the proceeds of said sale by decree of the referee authorizing the sale. The deed of trust in question was executed in 1916 before the bankruptcy of said Easterling, and was given to secure an indebtedness due five years after date.

It is contended on behalf of the appellee that the referee in bankruptcy had no authority under the law to order a sale of the property in question free from the lien of the deed of trust to appellee; that such a power is vested alone in the federal district judges sitting as courts of bankruptcy, and is not a power that can be exercised by referees in bankruptcy.

The Bankrupt Law of 1867 (14 Stat. 517) expressly conferred the power on referees to sell the property of a bankrupt free from incumbrances; and it is true that the present bankrupt law contains no such provision, and for this reason, in the early administration of the law there was doubt as to the referees having such authority. The supreme court of the United States has not decided the question. The lower federal courts, however, seem to be unanimous in holding that referees have such power. 2 Collier on Bankruptcy (12 Ed.), p. 1171; Black on Bankruptcy (3 Ed.), section 471. The authorities on this question will be found collected in the notes of the references to Collier and Black, *supra.*

It is contended that, even though the referee had authority to order the sale in question, still the proceedings and sale are void because the bankrupt court by such proceedings never acquired jurisdiction of the appellee, Riley, for the reason notice thereof was only given him through the mails, and not served on him personally, as it should have been.

The determination of this question depends in a measure at least on the question whether or not by the bankruptcy

proceedings the bankrupt court got jurisdiction of said property. The bankrupt law required Easterling, the bankrupt, to file schedules with a list of creditors, with their post office address, secured and unsecured, including a description of the property on which there were liens, and a list of the holders of such liens. This was done, and said bankrupt in his schedules listed appellee as a simple unsecured creditor in the sum of seventy-five dollars for wages, which was set down as a preferred claim, and also as a secured creditor in the sum of three thousand dollars by a deed of trust on the house and lot here in question.

Section 70 of the Bankrupt Act (U. S. Comp. St., section 9654) in express terms provides that on his appointment the trustee in bankruptcy gets the title and the possession of all of the assets of the bankrupt subject to his debts for the purpose of administration. It is hardly necessary to discuss this question further. One of the fundamental requirements of the bankrupt law is that the entire assets of every kind of the bankrupt, subject to his debts, shall be taken into the custody of the bankrupt court for administration, where all conflicting rights, claims, and liens thereto shall be adjudicated by the bankrupt court, in a summary way. This does not apply, however, to property of the bankrupt in the possession of adverse claimants. In such cases it seems that in order to settle the conflicting rights of the trustee representing the estate of the bankrupt, and the adverse claimant, a formal adversary proceeding is necessary in the proper court. However, we have nothing to do with that question here. The property here involved was not in the possession of an adverse claimant, but of the bankrupt. Appellee Riley only had a deed of trust on it to secure an indebtedness. He claimed no title to the land. Therefore it seems clear that this lot at the time of its sale by order of the referee free from liens, was in the custody of the bankrupt court. The *res* was in court, and the creditors of the bankrupt under the law knew that the bankrupt court, and that alone, was the forum to which they must resort to

settle any rights or claims of whatever kind they might have therein.

Appellee contends that, notwithstanding the bankrupt court had jurisdiction of the property in question, still that the proceeding to sell it free from liens was in the nature of an adversary proceeding, and that the referee had no power to decree a sale except upon a petition or bill by the trustee for that purpose, making the appellee a party thereto, setting out the facts and the reasons for the proposed sale; and that it was necessary that appellee be notified by summons or rule to appear at a given time and contest such bill or petition; and that this was not done in the proceedings in question; the only notice of such proceeding being a general notice to creditors, including the appellee, given by mail, of the pendency of the petition by the trustee, and the time and place for its hearing; and that this was insufficient; and that the condemnation and sale of the property on such a proceeding and notice amounted to depriving appellee of a property right without due process of law, in violation of the due process clause of the Constitution of the United States.

The petition of the trustee praying for the sale of the property in question free from liens, after the formal caption stating the court in which the proceeding was pending, contained the style of the bankruptcy proceedings, viz., "In the Matter of A. V. Easterling, Bankrupt," and was addressed to the referee before whom said bankruptcy matter was pending, and set out in substance that the lot and storehouse thereon here in question constituted part of the assets of the bankrupt in the possession of the trustee, and described the deed of trust thereon by the bankrupt to the appellee, and the amount of indebtedness it was given to secure, including its date, and alleged that it was to the best interest of the estate and the creditors and all parties concerned that said property be sold free from said lien, and said lien be transferred to the proceeds of said sale. The petition also averred that for certain reasons said deed of trust was void, and at the proper time

the trustee would resist the application of the proceeds of the sale of said property to the payment of appellee's said indebtedness. The petition concluded without a specific prayer for process for the appellee. On the filing of this petition the referee issued and mailed notices to all the creditors, including the appellee, of the filing of said petition, its purpose, and the time and place of the hearing of the same. These notices were signed by the referee, and addressed "To the Creditors of the Above Estate" (referring by "above estate" to the style of the cause which was set out above), and were mailed in time to be received by appellee more than ten days before the time and place set for the hearing of the petition; and the evidence in the case shows that the appellee actually received the notice mailed to him. In pursuance of this petition and notice, there being no objections filed to the petition, nor answer made by any of the creditors, the referee made a decree for the sale of the property free from the deed of trust of appellee, which sale accordingly took place, the notice of which was published in a newspaper in the county, giving a description of the property and the time and place of sale; the property was purchased by Welch for one thousand and fifty dollars who accordingly received a deed from the trustee after having paid his bid. As stated above, appellant claims title by mesne conveyance through said Welch.

The said sale by the trustee was afterwards confirmed by the decree of the referee after ten days' notice by mail to all the creditors of the estate, including appellee.

In addition to the notice by mail of the application of the trustee to sell the property in question free of liens which the appellee received, the bankruptcy proceedings, which are a part of the record in this case, show that appellee probated an unsecured claim against the estate of said bankrupt, Easterling, for the sum of seventy-five dollars for wages as a clerk in the store of said bankrupt, for which he claimed a preference, and that the court allowed

said claim to the amount of something like fifty dollars, which was paid to the appellee and receipted for by him.

In considering the proposition whether by the proceedings and notice in question the bankrupt court acquired jurisdiction of the appellee, or, stating it differently, whether the condemnation and sale of said property through said proceedings and notice amounted to depriving the appellee of a property right (the lien of his deed of trust), without due process of law, it will be well to have in mind a general view of the bankrupt law from a standpoint of the Constitution. Although what will be said in this respect will not be decision, still it will probably serve the purpose of clearing the field of undergrowth, and thereby aid in obtaining a better view of the main question.

Paragraph 4, section 8, article 1, of the federal Constitution, among other things, confers on Congress the power to establish "uniform law on the subject of bankruptcies throughout the United States." In pursuance of that provision of the Constitution the present bankrupt law was enacted. By the enactment of this statute Congress occupied the entire field. All state laws, as well as state constitutional provisions, on the subject were superseded. In other words, the Bankrupt Act in its scope and purpose, under the Constitution, is the supreme law of the land on that subject. The power of Congress under this clause of the Constitution is broad enough to authorize not only a uniform system of bankruptcy, but rules and modes of procedure for its administration, and if such rules and procedure should differ from that in ordinary suits, still they would be obligatory upon the bankrupt courts, for the reason that Congress under the Constitution has plenary authority on the subject. Black on Bankruptcy (3 Ed.), section 2, and authorities cited in note. The Bankrupt Act does not deprive creditors of their property without due process of law, because it does not provide for notice to creditors of the filing of a voluntary petition in bankruptcy; or because it does not require personal serv-

ice of notice on creditors of the application for discharge of a bankrupt in voluntary proceeding; or because the notice provided by the Bankrupt Act is unreasonably short, and the right to oppose the discharge is unreasonably restricted.

The supreme court of the United States held, in *Hanover National Bank* v. *Moyses,* 186 U. S. 181, 22 Sup. Ct. 857, 46 L. Ed. 1113, 8 Am. Bankr. Rep. 1, that Congress had the power to prescribe any regulations concerning the discharge of bankrupts from their debts that are not so grossly unreasonable as to be incompatible with fundamental law; and in that case the court held that the Bankrupt Act did not require personal service of notice on creditors of the application of the bankrupt for his discharge; that such notice was not required under the due process clause of the Constitution. Although the Bankrupt Act in its administration annuls vested rights and impairs or destroys the obligation of contracts by releasing debtors from their debts upon partial payment, or without any payment at all, and making its provisions compulsory upon all creditors, still for that reason it is not unconstitutional. Black on Bankruptcy (3 Ed.), section 2.

The inhibition in the federal Constitution against impairing the obligation of contracts is a limitation alone upon state authority, and does not affect the authority of Congress. There is nothing in the federal Constitution which forbids Congress to pass laws impairing the obligation of contracts, provided, of course, such legislation is enacted in pursuance of constitutional authority. Therefore it has been held under the Bankrupt Act that debtors may be entirely discharged from the obligation of their contracts. Black on Bankruptcy (3 Ed.), section 2. Nor is there anything in the federal Constitution which prohibits the Bankrupt Act in its administration from destroying the liens upon the property of the bankrupt if it shall be deemed necessary for the effective administration of the law, whether such lien be created by contract, judgment, or statute. Black on Bankruptcy (3 Ed.), section 2.

128 Miss.—44

690   McRaney *v.* Riley.   [Sup. Ct.

Opinion of the court.   [128 Miss.

Section 58 of the Bankrupt Act (U. S. Comp. St., section 9642) expressly provides as to the manner of service of notice on creditors of the bankrupt of various proceedings in the bankrupt court, and, among other things, it provides that—"Creditors shall have at least ten days notice by mail to their respective addresses as they appear in the list of creditors of the bankrupt, or as afterward filed with the papers in the case by the creditors, unless they waive notice in writing, of . . . all proposed sales of property."

It seems to us the question in this case resolves itself into whether that provision of the Bankrupt Act is violative of the due process clause of the Constitution, for it was complied with in the giving of the notice in question to appellee. We have reached the conclusion that it does not, for these reasons: As we have seen, the entire estate of the bankrupt, subject to his debts, was in the custody of, and being administered by, the bankrupt court. The bankrupt court thereby had acquired jurisdiction of the *res.* All creditors, including lien creditors, under the law knew this to be true. They were affected by law with notice of it. The bankruptcy proceeding was a pending cause, which had brought into the bankrupt court all the assets of the bankrupt over which the court had jurisdiction to settle all conflicting claims to and liens thereon. If the notice given to the appellee be treated only as constructive notice, we see no constitutional objection thereto. It is unnecessary to cite authorities to establish the principle that where property has been brought into the custody of the court, either by foreign attachment, or otherwise, the court has the power to condemn such property to the payment of the debt of the owner upon publication of notice in a newspaper, which is only constructive notice. We believe it will be found that the courts of this country, both state and federal, are practically unanimous in so holding, and that such notice by publication does not violate due process of law.

Counsel for appellee cite as sustaining their contention that appellee by the proceedings in question was deprived

128 Miss.] | Syllabus.

of due process: *Ray* v. *Norseworthy,* 23 Wall. 128, 23 L. Ed. 116; *Haynes* v. *Pickett,* 154 U. S. 627, 14 Sup. Ct. 1202, 23 L. Ed. 1008; *Factors' & Traders' Insurance Co.* v. *Murphy,* 111 U. S. 738, 4 Sup. Ct. 679, 28 L. Ed. 582; *Cain* v. *Sheets,* 77 Ala. 492; *In re Kinsey,* 184 Fed. 694, 106 C. C. A. 648; *In re Kohl Brick Co.,* 176 Fed. 340, 100 C. C. A. 260; *In re Saxton Furnace Co.* (D. C.), 136 Fed. 697. In each of these cases there was involved, as here, the validity of a sale by a court of bankruptcy of the property of the bankrupt free of liens, but in none of those cases was any kind of notice whatever served on the bankrupt. The property had been condemned to be sold, as we understand these cases, without the lienors being in any manner made parties. In the *Murphy case, supra,* the lienor had actual notice of the proceeding. The court held that to be insufficient, and in discussing the question in that case as well as the others, it was held that notice either by rule or otherwise was indispensable to the validity of such sale, and in some of them it is stated that personal notice is necessary. But such statements must be limited to what was before the court. The court did not have in mind any particular kind of notice, but an entire absence of any kind of notice, except as stated, actual notice in the *Murphy case, supra.*

Reversed, and decree here for appellant.

*Reversed.*