**LAYTON v. THAYNE.**

No. 2583.

Circuit Court of Appeals, Tenth Circuit.

Jan. 19, 1943.

See, also, 116 F.2d 796.

J. D. Skeen, of Salt Lake City, Utah (E. J. Skeen, of Salt Lake City Utah, on the brief), for appellant.

Karl V. King, of Salt Lake City, Utah, for appellee.

Before PHILLIPS and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This is a proceeding under Section 75 of the National Bankruptcy Act, 11 U.S. C.A. § 203. By stipulation, the case was submitted to two members of the court. The appellant, Clifton B. Layton, formerly was the owner of certain farm lands in Utah, the exact description of which does not appear in the record, and which will be referred to herein as the farm. In December, 1934, he gave the Davis County Bank a mortgage on this farm of $5,000. Thereafter, in the same month, he executed a second mortgage to the Rural Rehabilitation Corporation in the sum of $3,500. This mortgage was transferred to appellee, William J. Thayne. On February 1, 1937, Thayne instituted foreclosure proceedings on the second mortgage against appellant, subject to the first mortgage. On February 15, 1937, appellant deeded the farm to his wife, subject to the mortgages and subject to release by the federal court under pending debtor relief proceedings. The Thayne mortgage foreclosure suit proceeded to judgment and sale. No redemption was made, and on April 2, 1940, a sheriff's deed was issued and delivered to Thayne. On

March 25, 1941, the Davis County Bank instituted foreclosure proceedings on the first mortgage. This suit also went to judgment and sale. At the sale, the bank purchased the property for $180.46 less than the amount of its claim. As a result, appellant became a judgment debtor. On March 27, 1941, under an appropriate writ, the sheriff removed appellant and his wife from the farm.

Shortly before the expiration of the period of redemption under the . bank's foreclosure proceedings, appellant instituted these proceedings, and, having failed to reach a settlement with his creditors, filed an amended petition under Subsection s of the Act, and was adjudged a bankrupt. An order to show cause was filed, directing appellant to appear and show cause why the farm should not be stricken from the schedules and why the proceedings should not be dismissed. The court found that appellant was a judgment debtor; that he had a right of redemption; that any redemption made by him would inure to the benefit of his wife; and that he would not thereby acquire such a status as would permit him to maintain these proceedings; and that he was not a farmer within the purview of Section 75, sub. r, of the Act. An order dismissing the proceeding was entered May 1, 1942.

Two questions are inherent in this case: First—Is appellant a farmer within the meaning of the Act and thus entitled to maintain this proceeding? and, Second—If the first question is answered in the affirmative, may he bring this farm into the proceeding? These questions will be discussed in their inverse order.

While the court did not separately pass on the application of appellee to strike the farm from the schedules, that question was involved in the judgment and is present in this appeal. Appellant began his first proceedings under Section 75, June 22, 1933. For more than nine years, in one form or another, this proceeding has wended its tortuous way through the courts and should be concluded without further unnecessary delay.

■ It is conceded that under the laws of Utah appellant has a right of redemption. This right of redemption is within the protective provisions of the Act and may be protected in a proceeding instituted by one entitled to the benefits of the Act. Minnie Reese Richardson Wragg v.

Federal Land Bank of New Orleans, Supreme Court, 63 S.Ct. 273, 87 L.Ed. ——, decided January 4, 1943. But it does not follow that, because a distressed farmer has a right of redemption in a farm, he is entitled to the possession thereof, together with the income therefrom, in a farmer-debtor proceeding.

■ The distinction between "equity of redemption" and "right of redemption" has been largely abolished and in many instances the terms are used interchangeably. It may be helpful to note the origin of these two terms. At common law the equity of redemption was the right, title, interest or estate that an owner had left in real estate after he had placed a mortgage thereon. He protected this interest by paying the obligation before default. It existed before default and was lost and came to an end by foreclosure proceedings. Wiltsie on Mortgage Foreclosure, 5th Ed., § 1061; 42 C.J. § 2068. To obviate the harshness of this rule, equity first and later the law gave a right to redeem after foreclosure. This, strictly speaking, is the "right of redemption." It is a mere personal privilege rather than an interest or estate in the land. It may be exercised only by those persons named in the statute, Wiltsie on Mortgage Foreclosure, 5th Ed., § 1139; 42 C.J. § 280, and by them only after foreclosure. It does not constitute any interest or estate in the real estate itself.

■ Here appellant had parted with all interest in the farm by his deed to his wife. Her title to the farm had passed to appellee by sheriff's deed. Both he and his wife had lost the possession of the farm. Admittedly, after he had conveyed this farm by deed and before he became a judgment debtor, he had no interest or claim, personal or otherwise, in or to the farm. The fact that his judgment creditor did not bid the full amount of his claim could not reinvest him with that which he had lost by his deed of conveyance and by eviction under process at the hands of the sheriff. If his status is that of a farmer and entitles him to the benefits of the Act, this personal privilege to redeem, which is not an interest in the farm itself, can be protected in this proceeding by an order staying the running of the period of redemption pending the administration of his estate, but it cannot give him a property right in the farm itself so as to entitle him to its pos-

session or the fruits thereof during the pendency of the proceedings.

 Whether appellant is a farmer within the meaning of the Act presents a close question. The purpose of the Act was to afford an opportunity to distressed farmers for rehabilitation. Wright v. Vinton Branch of Mountain Trust Bank of Roanoke, 300 U.S. 400, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455. The Act sought to accomplish this in two ways, first, through negotiations with the creditors under the supervision of the court, and, failing in this, then through administration by the bankruptcy court with the right to retain possession of all the property under the conditions provided for in the Act. To accomplish these salutary purposes, it has been repeatedly held that the Act is to be liberally construed in all its provisions. The broadest permissible latitude should be indulged in determining whether an applicant is a farmer.

While the court found that appellant had been engaged in no business or work other than farm labor or in the production of farm products since 1936, the court also found that after he leased the farm in 1936 he farmed a garden and bought and sold livestock on commission. When he was evicted from the farm in 1941, he went to Idaho and joined a son in farming operations on a crop share basis. He stayed only a short time, then sold his interest in the growing crops to his son and returned to Utah, where he has since resided with his family on a farm belonging to his mother. Since his return, he has been engaged in caring for a garden for his mother, and doing farm work, such as hoeing, feeding stock, irrigating, and work of like nature, for his neighbors for day wages.

In McLean v. Federal Land Bank of Omaha, 8 Cir., 130 F.2d 123, a case very similar to this one, the Eighth Circuit held that one who had lost a farm which he had operated, through foreclosure proceedings, and as a result was prevented from carrying on farming operations, would not lose his status as a farmer thereby and was nevertheless entitled to the benefits of the Act.

Appellant admittedly was a farmer until he leased his farm in 1936. He continued to reside thereon and farm some of it until he was evicted by the sheriff in 1941. He then went to Idaho where he farmed with his son until he returned to Utah. After his return he continued to reside on his mother's farm and did farm labor. While the question is not free from doubt, it is our conclusion that the enforced curtailment of his farming operations resulting from the foreclosure of the mortgages and his eviction from the farm has not existed a sufficient length of time to establish that he has abandoned farming as his business so as to destroy his farmer's status, which he admittedly had.

Even though appellant is not entitled to the possession of this farm, he is nevertheless entitled to have his other property, including the personal right of redemption, administered and his obligations liquidated under the provisions of Subsection s of the Act.

Reversed and remanded, with directions to proceed in accordance with the views expressed herein.