# GEORGE THATCHER CORPORATION v. BULLEN

No. 6688. Decided November 30, 1944. (153 P. 2d 655.)

See 8 C. J. S. Bankruptcy, Sec. 782.

L. E. *Nelson,* of Logan, for appellant.

J. D. *Skeen* and E. J. *Skeen,* both of Salt Lake City, for respondent.

TURNER, Justice.

Plaintiff and appellant filed in the original action in the District Court of Cache County, Utah, a petition, later amended, to set aside and vacate the satisfaction of its judgment previously entered therein. The lower court sustained a demurrer to and dismissed the amended petition. This appeal is taken from such order and judgment of dismissal.

The following facts are taken from the amended petition of plaintiff and are deemed true for the purposes of the demurrer interposed by defendant. The grounds of demurrer to the amended petition are that it does not state sufficient facts to sustain an order vacating the satisfaction of judgment and that the lower court has no jurisdiction to vacate the satisfaction or restore the judgment to effectiveness.

In December, 1940, appellant George Thatcher Corporation secured judgment against the respondent Russell Bullen in the City Court of Logan, Utah, for $796.07. An abstract of this judgment was duly filed with the clerk of the First Judicial District Court of Cache County and an execution issued thereon. On February 5, 1941, the sheriff sold at public auction the four tracts of land belonging to defendant and which are described in plaintiff's petition. Plaintiff bought the land in for the amount of its judgment and a few days later the sheriff issued to plaintiff his certificate of sale and made and filed with the clerk of the District Court his return of sale and the judgment was satisfied

in the judgment docket. On August 8, 1941, after six months' period of redemption from this sale had expired, the sheriff's deed was executed and delivered to plaintiff covering Tracts 1, 2 and 4. Tract 3 had been redeemed by defendant by the payment of $53.00 to plaintiff. The sheriff's deed was duly recorded August 9, 1941.

In the meantime, and on December 12, 1940, the First National Bank of Logan filed suit to foreclose a first mortgage on the lands in question, naming as defendants this plaintiff and this defendant and another party. Judgment in favor of the Bank in this foreclosure suit was entered March 8, 1941, and on April 3, 1941, the property was again sold at sheriff's sale and the Bank became the purchaser for the amount of its judgment.

Following this, on or about September 5, 1941, and prior to the expiration of the period of redemption under the Bank's foreclosure sale, defendant Bullen filed in the United States District Court for the District of Utah a voluntary petition in bankruptcy under the provisions of Sec. 75 of the Frazier-Lemke Bankruptcy Act, 11 U. S. C. A. § 203. He listed the four tracts of land involved herein as his property and listed the First National Bank of Logan in the list of his creditors, and he also listed the aforesaid judgment of the plaintiff as a subsisting obligation against him and the plaintiff as such judgment creditor.

On October 4, 1941, while this petition in bankruptcy was pending, and on the day following the expiration of six months from the date of the Bank's foreclosure sale, a sheriff's deed was executed and delivered to the Bank covering the property in question. The Bank and the plaintiff Thatcher Corporation on or about October 8, 1941, filed a joint petition in the Bankruptcy Court praying to have this property excluded from the bankruptcy proceedings because of the sheriff's deed above referred to. This petition was resisted by defendant, in whose motion it was stated in part "that it appears on the face of the said petition that the above entitled proceeding [bankruptcy] was initiated before the expiration of the period of redemp-

tion from the sale of the property therein described by the First National Bank of Logan." The Bankruptcy Court granted defendant's motion and dismissed the petition of plaintiff and the Bank, holding that the filing by defendant of his petition in bankruptcy "automatically stayed all proceedings" in the Bank case. Subsequently and on March 13, 1943, by order of the Bankruptcy Court, the property in question was sold for $28,275 in cash; all claims of the creditors of defendant Bullen listed in his petition were paid except that of the plaintiff herein. The defendant expressly objected to the payment of this plaintiff's claim on the ground that plaintiff had no interest remaining in the property or proceeds therefrom in view of the satisfaction of judgment entered in its original action. Money in excess of $2,000 was paid to the defendant through the bankruptcy proceeding, and the Bankruptcy Court retained $1,000 in its custody to secure payment of plaintiff's judgment pending the outcome of this action to set aside and vacate the satisfaction of judgment previously entered.

After a careful consideration of the foregoing facts, it is unnecessary to write a prolonged opinion. The lower court was in error.

There can be no doubt that the lower court has jurisdiction to set aside and vacate the satisfaction of judgment, if, under the facts, it is a mere docket entry, without consideration. *Knaak* v. *Brown et al.*, 115 Neb. 260, 212 N. W. 431, 51 A. L. R. 237; *Reed* v. *Fisher*, 90 Neb. 697, 134 N. W. 409; *Young Cleveland*, 33 Mo. 126, 82 Am. Dec. 155.

In determining the questions presented in this appeal, we are concerned primarily with the factual allegations of the petition filed in the District Court, with the legal effects of the acts of the parties involved and with the legal effects of what the Bankruptcy Court did, according to the allegation of the petition.

The bankrupt had to have some property right in the tracts of land to give the Bankruptcy Court jurisdiction over the lands. It should be remembered that the Thatcher Corpora-

tion, prior to the commencement of the bankruptcy proceedings, had secured a sheriff's deed to three of the tracts of real estate with which we are concerned. It should also be remembered that the Bank had a lien prior to that of the Thatcher Corporation, but the period of redemption in the Bank's foreclosure action had not run when the bankruptcy proceedings were commenced.

We are of the opinion that the only property right the defendant had in the real estate involved was a right of redemption from the foreclosure action brought by the Bank. This right of redemption is a property right and a valuable one, and subject to being administered in the Bankruptcy Court. *Wragg* v. *Federal Land Bank*, 317 U. S. 325, 63 S. Ct. 273, 87 L. Ed. 300; *Buss* v. *Prudential Ins. Co.*, 8 Cir., 126 F. 2d 960.

Sec. 104-37-30, U. C. A. 1943, provides that property sold subject to redemption may be redeemed by "The judgment debtor, or his successor in interest * * *," and the courts have held that he has this right even though someone else has succeeded to his interest in the property. *Yoakum* v. *Bower*, 51 Cal. 539; *Higgs* v. *McDuffie*, 81 Or. 256, 157 P. 794.

We must therefore conclude that when the defendant filed his petition in bankruptcy and listed among his assets the tracts of land involved herein and listed Thatcher Corporation and the Bank as creditors, the Bankruptcy Court did acquire jurisdiction over the bankrupt and his property. The Federal Court having jurisdiction, has exclusive jurisdiction of the person and property of one petitioning for agricultural composition under the Bankruptcy Act until the proceedings are terminated. Sec. 75 subs. n, o, p. of the Frazier-Lempke Act, 11 U. S. C. A. § 203, subs. n, o, and p; *Security First Nat'l Bank of Los Angeles* v. *Superior Court*, 12 Cal. App. 2d 140, 55 P. 2d 532; *Clinton* v. *Shoop*, 8 Cir., 1941, 118 F. 2d 811; *Bernards* v. *Beck*, 1941, 167 Or. 178, 115 P. 2d 329.

It is well established by recent decisions that where the Bankruptcy Court has acquired jurisdiction and there is a

mortgage foreclosure involved, all proceedings in the state court are automatically stayed from the filing of the petition. *Cusack* v. *Prudential Ins. Co. of America et al.*, 1943, 192 Okl. 218, 134 P. 2d 984; *Kalb* v. *Feuerstein*, 308 U. S. 433, 60 S. Ct. 343, 84 L. Ed. 370. In *Cusack* v. *Prudential Ins. Co.*, supra [192 Okl. 218, 134 P. 2d 990], the court says:

"The question is one of federal law and it is incumbent upon us to follow the decisions of the Supreme Court of the United States. Any disposition which we might have to adopt the view of the trial court and of the subordinate federal courts (above specifically referred to) is foreclosed by the more recent decision of the Supreme Court of the United States in *Kalb* v. *Feuerstein*, 308 U. S. 433, 60 S. Ct. 343, 84 L. Ed. 370. It was therein held in substance that the stay contemplated under section 75 of the Act operates as an automatic statutory ouster of jurisdiction in so far as the power of state courts in foreclosure proceedings is concerned."

Note the following excerpt quoted from the decision of the Supreme Court of the United States in the Kalb Case [308 U. S. 433, 60 S. Ct. 347, 84 L. Ed. 370], above cited:

" 'All such property shall be under the sole jurisdiction and control of the court in bankruptcy, and subject to the payment of the debtor farmer's creditors, as provided for in * * * Section 75 * * *.'

"As stated by the Senate Judiciary Committee in reporting these amendments: '* * * subsection (n) brings all of the bankrupt's property, wherever located, under the absolute jurisdiction of the bankruptcy court, where it ought to be. Any farmer who takes advantage of this act ought to be willing to surrender all his property to the jurisdiction of the court, for the purpose of paying his debts, and for the sake of uniformity.' "

Counsel for the defendant Bullen contend that the time for redemption by Thatcher Corporation in the Bank foreclosure case was not stayed; that Thatcher Corporation slept on its rights; that it did not redeem within the time allowed by law and, therefore, it having bought the lands at sheriff's sale to satisfy its judgment and satisfaction of judgment having been entered, the corporation got what it bargained for and cannot assert itself as a creditor.

By consent or acquiescence of creditors, or after giving notice to creditors, the bankruptcy court may order the sale of realty free from liens.

See *Miller* v. *McKenzie*, 1933, 217 Cal. 389, 19 P. 2d 1; *McRaney* v. *Riley et al.*, 1922, 128 Miss. 665, 91 So. 399, 22 A. L. R. 685.

We belief the automatic stay of proceedings stayed the running of time of redemption for the debtor's successor, Thatcher Corporation, as well as for the ∎ debtor. The wording of the Federal Act and the recent decision of the Supreme Court of the United States (supra) warrant this conclusion.

The following recital of provisions of the act are copied from the court's opinion in *Kalb* v. *Feuerstein*, supra, at page 441, of 308 U. S., at page 347 of 60 S. Ct., 84 L. Ed. 370:

"'(p) The prohibitions * * * shall apply to all judicial or official proceedings in any court or under the direction of any official, and *shall apply to all creditors*, public or private, and to all of the debtor's property, wherever located. All such property shall be under the sole jurisdiction and control of the court in bankruptcy, and subject to the payment of the debtor farmer's creditors, as provided for in (paragraph) 75 of this Act."

If such were not the case, Thatcher Corporation to preserve itself from a loss of approximately $1,000 would be required to expend more than $25,000 to redeem the property from the bank and it would be compelled to sit and wait for months or even years until proceedings in the Bankruptcy Court were terminated before it could take possession of the lands or make a sale of the lands and during this time might be confronted with orders of the Bankruptcy Court.

The allegations of the petition before us justify the conclusion that the corporation would have been warranted in making the purchase, under its right of redemption, if it were not for the stay of proceedings. This is made evident from the allegation respecting the sale made through Bankruptcy proceedings for the lands were sold for con-

siderable more than enough to pay the claim of the bank and that of Thatcher Corporation. We cannot conceive of a bank willing to make a loan for purchase of redemption if the purchaser could not have possession of the property or right to safely sell the same for a matter of months or years from time of purchase, neither can we visionalize a redemptioner able to afford such an expenditure under such conditions.

From the allegations of the petition it is fairly inferable that the Bankruptcy Court, by its order, authorized the sale of the listed real estate free from incumbrances. As the proceedings stayed the running of time of redemption, record title remained in Thatcher Corporation at the time of sale. Clear title to the lands could be had only through coooperation of Thatcher Corporation. The lands were sold, not just Bullen's right of redemption. Out of the money received the Bank was paid in full; one thousand dollars was set aside by the Court to be paid Thatcher Corporation, contingent upon it having the District Court vacate the satisfaction of judgment heretofore referred to. The defendant received more than two thousand dollars from the sale.

Because of the sale, further proceedings in the Bank's foreclosure action were avoided. Without completion of the Bank's foreclosure proceeding the right of Thatcher Corporation to the lands was not extinguished. We think it fairly inferable from the pleadings that the plaintiff accepted the position of creditor because of the actions of the defendant and those of the Bankruptcy Court and consented to the sale of the property and acquiesced in it, expecting to be treated as a creditor instead of relying on its deed to the three tracts, or its right of redemption.

Where the plaintiff has come into equity seeking to have satisfaction of judgment set aside, we believe we can justly conclude it stands ready and willing to do equity and has released its title and interest in and to the lands to the purchaser in bankruptcy proceedings, or is ready and willing to do so.

Clear title in the purchaser is contingent upon this. We believe the purchaser who paid $28,275 for the lands at least was assured he would get clear title to them. He undoubtedly did not make such an expenditure to purchase litigation. The Bankruptcy Court realized the Thatcher Corporation would have to be paid, as a creditor, if it were to consent to the sale of the lands and stand ready and willing to convey its right, title and interest in and to them.

The Bankruptcy Court made its order authorizing sale of the lands with these facts before it and made its order setting aside $1000 to be paid the plaintiff when satisfaction of judgment was vacated or set aside, knowing the situation of this plaintiff. By its acts it has placed Thatcher Corporation in the position of creditor, entitled to payment from funds received through the sale of the lands and in doing so Bullen has benefited, as he could not have done otherwise.

The defendant has attempted to substitute cunning for candor in an effort to circumvent his obligation to the plaintiff. It was Bullen who instituted bankruptcy proceedings and where he has received benefits from the sale of the lands in bankruptcy, he cannot consistently take a position that will defeat clear title or necessitate additional legal proceedings because of the sale. This court will not encourage cunning tactics to defeat justice.

We are of the opinion that the amended petition clearly states facts sufficient to warrant the relief sought if the allegations are found to be true. The judgment of the lower court is reversed and the cause remanded with directions to overrule the demurrer and for such other appropriate proceedings as are consistent with this opinion. Costs to appellant.

WOLFE, Chief Justice.

I concur.

Mr. Justice Turner concludes that the intervention of bankruptcy proceedings stayed the period of redemption of the plaintiff in respect to the foreclosure by the bank.

Mr. Justice Wade concludes otherwise but arrives at the same result by holding that the "redemption" by the bankruptcy court from the bank by the exercise of defendant's right of redemption restored the status of *both* plaintiff and defendant in respect to the property as it was *before* foreclosure of the bank; that *at that time* defendant had parted with all his right, title and interest to plaintiff and plaintiff's right of redemption had of course not yet run against the bank because the foreclosure had not taken place. I shall later advert to this conception.

For reasons hereafter stated I think the running of the period of redemption of plaintiff in respect to the bank was stayed by the intervention of the bankruptcy proceedings. For that reason and for the further reason that I think defendant did some things in regard to the bankruptcy proceeding only consistent with his recognition of plaintiff as a creditor, I agree with the opinion of Mr. Justice Turner. I might well leave my concurrence at this point were it not for the fact that I want to make my position clear as to some holdings of the bankruptcy court which in this collateral proceeding we must accept as correct for the purpose of this suit but which I think should still remain open for decision of this court when they come before us for original cognizance.

While 11 U. S. C. A. § 203, sub. n provides that the filing of a relief petition by the farmer shall subject the "farmer and all his property * * * including * * * the right or the equity of redemption * * *," I think the question might arise as to what was the property of the defendant in this case. The sale to the plaintiff at execution had divested the defendant of *all* his right, title and interest in the property. When the period of redemption in respect to that sale had run it passed to the plaintiff absolutely, subject to the lien of the bank. See Sec. 104-37-29, U. C. A. 1943. Sec. 104-37-30, U. C. A. 1943, provides that "property sold subject to redemption * * * may be redeemed * * * by * * * the *judgment debtor,* or *his successor* in interest * * *." (Italics added.) On reading

the section I would have thought that where property was sold on execution sale subject to a prior lien and subject to an equity of redemption if the equity of redemption were not exercised within the six months against the purchaser, the judgment debtor would have nothing left and that right of redemption would not spring into existence in his favor when the prior lienor foreclosed against the successor in interest, i. e., the purchaser at the execution sale. In short, that the phrase "judgment debtor, or his successor in interest" meant to give the right of redemption to the judgment debtor *until* his successor in interest took his place.

I am not convinced that the holding in *Layton* v. *Thayne,* 10 Cir., 133 F. 2d 287, 289 which says, "it is conceded that under the laws of Utah appellant [Layton] has a right of redemption," is correct. It may have been conceded for that case. True, Layton did become a judgment debtor of Davis County Bank, the first mortgagee when that bank obtained a judgment against him on foreclosure after he had parted with all his right, title and interest in the property to Thayne, the second mortgagee in the foreclosure proceeding of the latter and had failed to redeem from the foreclosure proceeding. But I still think the question is open in this jurisdiction whether Sec. 104-37-30 was intended to apply to that situation. Some of my reasons for this doubt will appear from what is hereafter said. Why it should have been conceded in the Federal Court that in Utah a mortgagor who was completely dissevered from his property by the foreclosure sale of second mortgagee or judgment creditor and lapse of period for redemption as to that mortgagee has a right of redemption as against a first mortgagee who later forecloses is shrouded in mystery. We have never so held in this state. California held in an early case under a statute like ours that when the mortgagor *conveyed* his interest to another he could still redeem as execution defendant from a purchaser at an execution sale. This was on the ground that the judgment debtor may have covenanted with his successor in interest to effect a redemption from the sale

or for other reasons might have an interest in effecting a redemption from execution sale despite the fact that he had sold the property. Those are all the reasons which are given. It seems highly improbable that the legislature meant to retain in the judgment debtor a right to redeem because he may have convenanted with his grantee to redeem. The Oregon Court in *Higgs* v. *McDuffie*, 81 Or. 256 at page 263, 157 P. 794, holds that there is no judgment debtor until judgment and that hence there can be no successor in interest to the judgment debtor until *after* foreclosure, and consequently "successor in interest" as used in the redemptioner statute reading in this respect as ours, means one who succeeds to the judgment debtor's right to redeem since such right rises by statute in the judgment debtor only after "a sale upon a decree including a personal judgment against a defendant." Under this definition of successor in interest only one to whom Bullen conveyed his right of redemption could be a successor in interest. Under this conception the right of redemption, purely a creature of statute (the equity of redemption as it was known in the common law having been extinguished by foreclosure) was a property right and could be conveyed. The grantee of such right was the successor in interest. Under such conception the judgment debtor or his successor in interest could not both have the right of redemption, the judgment debtor having parted with it. It should be noted that the Oregon statutes on foreclosure and redemption varied somewhat from ours in 1916 when the McDuffie case was decided.

I have set out the substance of the above cases to emphasize reasons for desiring to reserve the question of whether the judgment debtor *and* his successor in interest, whomsoever that term may embrace, possess a right to redeem. Of course, until we speak, the Bankruptcy Court must follow the holdings of the Circuit Court of Appeal as found in the Thayne case. And we are bound by the holding in this collateral proceeding. But a holding of the Federal Court construing our statute would, of course, not be binding on us if the question came to us as a matter originally

cognizable in our state courts. It is in that regard that I am reserving opinion. This court cannot be foreclosed on that question by the decisions in the Federal Courts. I concede, however, that there is considerable merit to the thought that regardless of the term "successor in interest" Bullen would again become a judgment debtor as to the bank in its foreclosure proceedings and that by virtue of that event Sec. 104-37-30, U. C. A. 1943, again became applicable. For the purposes of the matters before us, however, I must assume that the Bankruptcy Court was correct in holding that when the First National Bank of Logan foreclosed, Bullen again became a judgment debtor and under Sec. 104-37-30, U. C. A. 1943, had a right of redemption. I must also accept as the law that such right of redemption, whether a property right or a privilege, was an interest subject to the bankruptcy court. This has been definitely decided in *Wragg* v. *Federal Land Bank of New Orleans,* 317 U. S. 325, 63 S. Ct. 273, 87 L. Ed. 300. And, perhaps, as stated by Mr. Justice Wade, we should assume that what the bankruptcy court did in order to develop a fund of $28,273 from a sale of property out of which the bank was paid its indebtedness, amounted to an exercise of this right of redemption regardless of what actually transpired. But I do not think it necessary to so assume because all we need know is that a fund of $28,-273 stood in place of the property and the interest of Bullen and the Thatcher Corporation are as to that fund as they were to the property whether by stipulation among them and the bank or by the holding of the bankruptcy court.

At all events I do not think that we are in position to question the rulings or actions of the bankruptcy court. Since its decision or actions have not been appealed we must assume them to be correct. But the fact that the bank filed a petition to have the property in question discharged from the jurisdiction of the bankruptcy court which petition was on motion of the defendant, denied, leads one to speculate as to whether the Bankruptcy Court did not actually reach out and take in the real estate itself in bankruptcy

administration rather than exercise defendant's right of redemption to obtain the property. Be that as it may, it appears that all parties were satisfied with the sale of that property for $28,273 and that the bank has been paid off in full and that the fund stands in place of the property in the bankruptcy court. And whether we accept the solution of Mr. Justice Turner or Mr. Justice Wade, the plaintiff elected to treat himself as a creditor which indeed the defendant treated him as being, by so listing him.

Mr. Justice Wade holds that under Sec. 104-37-32, U. C. A. 1943, a redemption by the judgment debtor not only restores to the judgment debtor his former estate (in this case nothing because it had all passed to the plaintiff) but placed the plaintiff in the same position it was before the bank's foreclosure sale. In other words, that even though right of redemption of the Thatcher Corporation in respect to the bank had lapsed, the words in Sec. 104-37-32 reading "the effect of the sale is terminated" has the effect of putting plaintiff in the position it would have been in had a sale been made and hence the effect of plaintiff allowing the period of redemption to lapse in respect to the bank was also cancelled because all the effects of the sale were terminated and such was one of the effects of the sale. Such reasoning is necessary to produce the result reached by Mr. Justice Wade. I am not prepared to say that the language of Sec. 104-37-32 reading "If the [judgment] debtor redeems, the effect of the sale is terminated and *he* is restored to *his* estate" (Italics added) applies to any other than the judgment debtor. If it does not we have the curious spectacle of a judgment debtor redeeming in which case the title was fed into the plaintiff which had succeeded to all his right, title and interest only in turn to be fed into the Bank because it in turn succeeded to all the right, title and interest of the plaintiff whose period of redemption in respect to the bank, was according to the theory of Mr. Justice Wade, terminated. But the bank is paid and is evidently content in getting its debt and relinquishes its title to the bankruptcy court. Where, then, under this theory, does the money go? Logically

to pay Bullen's creditors and after they are paid the remainder to Bullen. But Bullen claims that plaintiff is not a creditor because his claim is satisfied, which might, under the theory of Mr. Justice Wade, be a good reason for the bankruptcy court requiring him to have the satisfaction of judgment set aside.

Moreover, what I conceive to be the results of the logic of Mr. Justice Wade's position, unless he is correct in concluding that the redemption by the judgment debtor terminates all the effect of the bank's foreclosure sale as to plaintiff, influences me to lean toward the view that if a mortgagor who has parted with all his right, title and interest has a right to resort to the bankruptcy court on the theory that a right of redemption springs up in his favor in case a prior lienholder forecloses against his successor in interest and joins him as defendant and gives him the status of a judgment debtor, the intervention of bankruptcy stays *all* the periods of redemption—in this case that of the plaintiff as respects the bank. Otherwise, the plaintiff would be required to redeem while the property was in bankruptcy as in this case in order to protect himself against loss.

But the plaintiff could not take a chance, even under the most favorable view of the theory of Mr. Justice Wade, that there would be a redemption by the bankruptcy court. Indeed one wonders why the bankruptcy court should exercise such right of redemption if its effect would enure only to the advantage of the judgment debtor's successor in interest, in this case the plaintiff. If the mortgagor resorted to the bankruptcy court and that court failed to redeem while the period of redemption of his successor in interest was running against the first mortgagee, the successor would run the risk of the bankruptcy court failing to exercise the mortgagor's right of redemption. He would therefore under the theory of Mr. Justice Wade be required to redeem in order to protect himself before the running of his period of redemption, provided the court did not in that time exercise the mortgagor's right.

In conclusion I should note that it would appear that if the bankruptcy court considered the plaintiff a creditor it should have permitted him to recoup his indebtedness without compelling him to resort to an action to set aside the satisfaction of judgment. If the satisfaction is set aside so it can go back to the bankruptcy court with a showing of an unsatisfied judgment it would be compelled on payment to again satisfy the judgment. It would appear that the conclusion of the bankruptcy court that plaintiff was a creditor would not depend on whether it had or had not a satisfied judgment but on facts independent of that satisfaction.

For the reasons stated above and with the reservation noted I concur in the opinion of Mr. Justice Turner.

McDONOUGH, J., concurs with the views expressed in the opinion of Mr. Chief Justice WOLFE.

LARSON, Justice.

I concur. But I think the opinion places too much stress and reliance upon the actions of, and proceeding in the bankruptcy court. Those matters are important not as events in themselves, but only because they were induced, brought about and effectuated by Bullen, or at his instance. Relying upon these actions of *Bullen*, Thatcher was justified in waiving his title to the land and accepting the position as an unpaid judgment creditor. Because of his own conduct, not the actions of the bankruptcy court, Bullen will not now be allowed to change his position and deny Thatcher's right to payment.

WADE, Justice (concurring in result).

I concur with the result for the reasons stated herein:

When the petition for relief in the bankruptcy court was filed all of the defendant's right, title and interest in and to the unredeemed tracts of land had been sold to plaintiff, through a sheriff's sale, in satisfaction of plaintiff's

judgment. The statutory period of redemption had expired and the sheriff's deed had been issued to plaintiff. As between plaintiff and defendant, all of the right, title and interest in this property was in plaintiff and defendant had no right, title or interest therein. See Sec. 104-37-29, U. C. A. 1943. Also, at the time the petition was filed, the First National Bank had purchased this same property through a sheriff's sale under its mortgage foreclosure judgment, but the statutory period for redemption from that sale had not yet expired. The Bank's mortgage lien being superior to plaintiff's title, in case the property was not redeemed from the sale to the bank, as between it and the bank, plaintiff would lose all its right, title and interest in the property and the bank would become the owner thereof.

11 U. S. C. A. Sec. 203, sub. n provides:

"The filing of the petition * * * praying for relief under this section, shall immediately subject the farmer and all his property, wherever located, for all the purposes of this section, to the exclusive jurisdiction of the court, including all real or personal property, or any equity or right in such property, including, among others, * * * the right or the equity of redemption where the period of redemption has not or had not expired, * * *.

"In all cases where, at the time of filing the petition, the period of redemption has not or had not expired, * * * the period of redemption shall be extended * * * for the period necessary for the purpose of carrying out the provisions of this section. * * *"

Under this section the filing of the petition automatically subjected the farmer and all his property to the exclusive jurisdiction of the bankruptcy court, and extended the period within which a redemption of the property from the sale could be made on behalf of the farmer. On the other hand there is nothing in this section which provides for an extension of the time within which the plaintiff could redeem the property from the sale to the bank, nor is there anything which would prevent the plaintiff from exercising that right within the time provided by law. The filing of the

petition gave the bankruptcy court exclusive jurisdiction over the farmer and his property, which in this case included the right or equity of redemption from the sale to the bank. Since the only right the defendant had was the right of redemption, the jurisdiction of the bankruptcy court could not go beyond that. The defendant being a judgment debtor in the mortgage foreclosure judgment, and plaintiff having succeeded to all his right, title and interest in and to this property, all the defendant had was a personal right to redeem the property from the sale to the bank. *Yoakum* v. *Bower,* 51 Cal. 539; *Layton* v. *Thayne,* 10 Cir., 133 F. 2d 287. This is a valuable property right and is subject to being administered in the bankruptcy court. *Wragg* v. *Federal Land Bank,* 317 U. S. 325, 63 S. Ct. 273, 87 L. Ed. 300; *Layton* v. *Thayne,* supra; *Buss* v. *Prudential Life Ins. Co.,* 8 Cir., 126 F. 2d 960.

Plaintiff's petition alleges that the property in question was sold in the bankruptcy court in defendant's bankruptcy proceedings for $28,273 and from the proceeds of such sale all claims listed in defendant's petition, except plaintiff's claim, have been paid. $2,046.18 thereof has been paid to defendant, but in addition thereto there is now sufficient money still held by the bankruptcy court to pay plaintiff's claim. At the time of the filing of defendant's petition in bankruptcy, as we have pointed out before, defendant's only right was a personal right to redeem the property in question from the sale to the bank, the filing of the petition gave the bankruptcy court exclusive jurisdiction to administer that right for the benefit of defendant and his creditors but did not give that court any greater right in the property than defendant had. The bankruptcy court had no right to sell that property without exercising the defendant's right to redeem the same from the sale to the bank. The legal effect therefore of the allegation that the property was sold in the bankruptcy court and from the proceeds of such sale the claim of the bank was paid, was, that the bankruptcy court exercised the bankrupt's right to redeem the property from the sale to the bank and then

sold the property. The fact that it is alleged first that the sale was made and the claim paid out of the proceeds thereof, simply means that there was a contract of sale made and when the redemption was effected, the purchaser received whatever title the bankrupt obtained as a result of the redemption. Otherwise the bankruptcy court had no right to sell the property.

The main opinion suggests that the bankruptcy court obtained authority to sell the property by the mutual acquiescence of all the parties interested therein, and therefore no redemption was effected. There is no such allegation in plaintiff's petition, but even if it were so alleged and it was shown that the bank had executed a quitclaim deed to the purchaser to perfect his title, it would still be in effect a redemption from the sale to the bank. The reason why the bank would be willing to consent to such an arrangement would be because of the right of the bankrupt to redeem, coupled with the fact that it would get its claim paid in full, and the balance would be equitably administered. Under such circumstances, in my opinion, the whole transaction would amount to a redemption from the sale to the bank and the rights of the other interested parties should be determined on that basis.

After this property had been redeemed from the mortgage foreclosure sale for the benefit of the bankrupt, defendant here, what were the resulting rights of defendant and plaintiff to such property? Sec. 104-37-32, U. C. A. 1943, provides that: "If the [judgment] debtor redeems, the effect of the sale is terminated and he is restored to his estate * * *." Under that provision when the defendant redeemed from the mortgage foreclosure sale the effect of that sale was terminated and the mortgage lien being paid, the ownership in the property was the same as though no mortgage foreclosure sale had taken place. Prior to the sale plaintiff, as purchaser under the sheriff's sale on his judgment, had been substituted for and had acquired all of the right, title, interest and claim of the defendant in and to this property. Thus, as between plaintiff and defendant,

plaintiff was the sole owner thereof and defendant had no interest therein, and by this redemption they were restored to their former estates. *Yoakum* v. *Bower*, supra; *Southern California Lumber Co.* v. *McDowell*, 105 Cal. 99, 38 P. 627; *Bateman* v. *Kellogg*, 59 Cal. App. 464, 211 P. 46; *Livingston* v. *Arnoux*, 56 N. Y. 507; *Harvey* v. *Spaulding*, 16 Iowa 397, 85 Am. Dec. 526.

In *Bateman* v. *Kellogg*, supra, Walker owned certain lands, subject first to a mortgage which was eventually owned by Boals, second a judgment lien which Stickney finally owned, and third a judgment lien of the plaintiff Bateman. Thereafter, Walker conveyed to a trustee to secure his debt to Woodruff, then plaintiff purchased the property under a sheriff's sale on an execution issued on his judgment; the trustee sold the property to Woodruff for the amount of his debt and the mortgage was foreclosed and the proceeds of the sale directed to be applied first to the payment of the mortgage debt and the balance, if any, to be applied to the judgment liens in their order of priority. At the sale Stickney purchased the property for the full amount of the mortgage debt and his judgment lien, leaving plaintiff's judgment lien unpaid and then Woodruff redeemed from Stickney. No one redeemed from plaintiff's judgment lien and a sheriff's deed was issued to him thereunder. Plaintiff did not redeem from Woodruff who received a sheriff's deed under the mortgage foreclosure sale and later sold to defendant. Plaintiff brought this action to quiet title against the defendant. The court held that the redemption by Woodruff was made as the successor in interest of the judgment debtor under a statute similar to our Section 104-37-30, U. C. A. 1943, and that by such redemption, under a statute similar to our Section 104-37-32, the effect of the mortgage foreclosure sale was terminated and plaintiff and Woodruff were each restored to his estate prior to the sale, but that the mortgage and first judgment lien had been paid. Since plaintiff had a superior title prior to the mortgage foreclosure sale, after the redemption he was restored to a superior title and the court ordered

plaintiff's title to the property be quieted as against the defendant.

Under that decision, had defendant redeemed from the mortgage foreclosure sale without resorting to a sale of the mortgaged property, such redemption would have terminated the effect of the mortgage foreclosure sale and the plaintiff, as between him and defendant, would have become the absolute owner of the property covered by the sheriff's deed to him. However, since plaintiff's right to redeem had expired and the money to redeem was obtained out of the proceeds of the sale in the bankruptcy court, plaintiff cannot now assert ownership to the property because his interest in that property was restored to him as a result of that sale. He can, however, ratify the sale and claim the net proceeds thereof after deducting therefrom the costs of sale and the amount paid therefrom to redeem. Here plaintiff is claiming only the amount of his judgment which is only a small part of the net proceeds of the sale of the property. Defendant cannot complain because plaintiff did not claim all that he was entitled to, particularly since defendant by his petition listed plaintiff as a creditor for the amount of the judgment.

I therefore concur with the result reached by Mr. Justice Turner.