37 P.3d 1166 (2001)
2001 UT App 307
STATE of Utah, in the Interest of S.A., a person under eighteen years of age.
D.A., Appellant,
v.
State of Utah, Appellee.
No. 20000266-CA.
Court of Appeals of Utah.
October 18, 2001.
*1167 Steven C. Russell, Salt Lake City, for Appellant.
Mark L. Shurtleff, Atty. Gen., and John Peterson, Salt Lake City, for Appellee.
Martha Pierce, Salt Lake City, Guardian Ad Litem.
Before GREENWOOD, P.J., and JACKSON, Associate P.J., and BILLINGS, J.
PAMELA T. GREENWOOD, Presiding Judge:
¶ 1 This is the first of two appeals stemming from a juvenile court adjudication regarding S.A. The juvenile court found that M.A. (Mother) abused T.A., S.A.'s younger brother, and this abuse resulted in T.A.'s death. The juvenile court also found that S.A. was a sibling at risk. In the course of the proceedings, the juvenile court determined that D.A. (Father), M.A.'s husband and father of both children, was not a party to the adjudication phase of the proceedings, and instructed Father's counsel he could not participate during the adjudication hearing.
¶ 2 Father appeals. We reverse and remand with instructions to the juvenile court to allow both Father and Mother to fully participate in the adjudication hearing.
¶ 3 Today we also issue In re S.A., 2001 UT App 308, 37 P.3d 1172, which addresses Mother's appeal. Our reversal in the present case requires a reversal in Mother's case as well. This opinion, however, addresses only those issues raised by Father.

BACKGROUND
¶ 4 The factual circumstances are fully related in the companion case. Accordingly, we cite only those facts relevant to the disposition of Father's appeal.
¶ 5 Mother and Father are married and are the biological parents of S.A., a male child born January 24, 1996, and T.A., a male child born May 25, 1999, who died September 14, 1999. Because the injuries suffered by T.A. were indicative of child abuse, medical personnel called the police and the Department of Family and Child Services (DCFS). The State filed a petition alleging T.A. died as a result of abuse and his brother, S.A., was a sibling at risk.
¶ 6 Prior to the adjudication hearing, the State filed a motion requesting that the juvenile court order Father to obtain separate counsel. The State and the Guardian ad Litem contended Mother and Father had conflicting interests. The trial court granted the State's motion and ordered Father to obtain separate counsel. The State also argued "there would be no adjudication pursued as to the father and that he had only been subpoenaed as a witness," and, therefore, Father was not a party to the adjudication. The juvenile court agreed and instructed Father's counsel that he would be allowed only to rehabilitate Father as a witness and could not otherwise participate during the hearing.
¶ 7 The juvenile court held an adjudication hearing on the State's petition. The juvenile court found Mother abused T.A., causing his death and, therefore, S.A. was a sibling at risk. Both Father and Mother appealed the juvenile court's decision.[1]

ISSUES AND STANDARDS OF REVIEW
¶ 8 The primary issue on appeal is whether the juvenile court erred in not allowing Father to fully participate during the adjudication hearing; specifically, present evidence, cross-examine witnesses, or make opening and closing statements. Father argues the juvenile court denied his rights to *1168 due process under the Fourteenth Amendment of the United States Constitution. Father argues the protection of these rights is supported by Utah Code Ann. § 78-3a-913(1)(a) (Supp.2000). The State and Guardian ad Litem argue Father was not a party to the adjudication and, therefore, lacks standing to appeal. "`Constitutional issues, including. . . due process, are questions of law which we review for correctness.'" In re S.L.F., 2001 UT App 183, ¶ 9, 27 P.3d 583 (citation omitted). We review "issues requir[ing] statutory interpretation . . . for correctness, giving no deference to the trial court." Id. Standing is also a question of law reviewed for correctness. See In re H.J., 1999 UT App 238, ¶ 14, 986 P.2d 115.

ANALYSIS
¶ 9 Father argues the juvenile court's action violated his due process rights because he had protected liberty interests at stake and did not have a "meaningful" opportunity to be heard. Father also argues Utah Code Ann. § 78-3a-913(1)(a) (Supp.2000) supports his right to be heard during the adjudicative phase. He relies on the following language: "[P]arents . . . shall be informed that they have a right to be represented by counsel at every stage of the proceedings." Id. We agree. First, Father has protected liberty interests which the trial court failed to protect by denying him the opportunity to participate in the adjudication hearing. Second, separate from the constitutional implications presented by this case, we conclude that the Utah legislature has mandated parental participation during juvenile court proceedings that may affect parental rights.
¶ 10 Father argues he has a protected liberty interest in both his right to maintain a family with S.A. and Mother and in the care and custody of S.A. He argues these interests were not protected when the juvenile court denied Father an opportunity to fully participate in the adjudication hearing.
¶ 11 "`Due process is flexible and calls for such procedural protections as the particular situation demands.'" Smith v. Organization of Foster Families for Equal. & Reform, 431 U.S. 816, 848, 97 S.Ct. 2094, 2112, 53 L.Ed.2d 14 (1977) (quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). In Smith, the Court stated:
[The] "identification of the specific dictates of due process generally requires consideration of three factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."
Id. at 848-49, 97 S.Ct. at 2112 (quoting Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)); see also V-1 Oil Co. v. Department of Envtl. Quality, 939 P.2d 1192, 1196 (Utah 1997) (quoting identical language). We examine these three factors in turn.

I. Protected Family Interests
¶ 12 We must first determine if Father had a protected interest affected by the juvenile court proceedings.[2]See Neel v. Holden, 849 P.2d 601, 602 (Utah Ct.App.1993). Father argues that his relationship with S.A. is a protected liberty interest. "The Fourteenth Amendment provides that no State shall `deprive any person of life, liberty, or property, without due process of law.'" Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 2059, 147 L.Ed.2d 49 (2000). "The liberty interest at issue in this case  the interest of parents in the care, custody, and control of their children  is perhaps the oldest of the fundamental liberty interests recognized by this Court." Id.; see also In re J.D.M., 808 P.2d 1122, 1126 (Utah Ct.App. 1991) ("There is no dispute that the parent-child *1169 relationship is accorded constitutional protection."); In re M.A.V., 736 P.2d 1031, 1033 n. 2 (Utah Ct.App.1987) ("Of course, parents have a fundamental liberty interest in maintaining family relationships with their children."). In sum, Father's "right to raise [his child] is a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution." Campbell v. Campbell, 896 P.2d 635, 641 (Utah Ct.App. 1995).
¶ 13 Father also asserts that he has a protected liberty interest in maintaining his relationship with Mother in conjunction with his protected rights regarding S.A. We agree. In Campbell, this court cited the United State Supreme Court's recognition of the liberty interest inherent in family relationships.
In Moore v. City of East Cleveland, 431 U.S. 494, 499, 97 S.Ct. 1932, 1935, 52 L.Ed.2d 531 (1977) (plurality opinion), it was stated: "This Court has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." See, e.g., Planned Parenthood v. Casey, 505 U.S. 833, 851, 112 S.Ct. 2791, 2807, 120 L.Ed.2d 674 (1992) (plurality opinion) (recognizing "constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education").
Id. at 641 (footnote omitted) (emphasis added). Further, "[i]n Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042, 1045 (1923), the Supreme Court included family relationships in the `liberty' of which a state cannot deprive any person without due process of law under the Fourteenth Amendment." In re J.P., 648 P.2d 1364, 1372 (Utah 1982).
¶ 14 We, therefore, conclude Father has a protected liberty interest in his parental relationship with S.A. and his family relationship with both Mother and S.A.
¶ 15 We next determine whether these protected interests were affected by the juvenile court proceedings. The State initially removed S.A. from the home because of the abuse of his younger brother. Father and Mother were represented by counsel at the shelter hearing. However, prior to the adjudication hearing, the juvenile court made two decisions relevant to our analysis. First, the trial court determined that Father and Mother had conflicting interests. The State and Guardian ad Litem represented to the juvenile court that Father was not responsible for T.A.'s injuries. Therefore, Father would have to choose between two competing interests. Specifically, Father would potentially have to distance himself from his wife in order to retain custody of S.A., or Father could choose to continue his marital relationship and possibly lose custody of his son. The trial court correctly determined that Father could not proceed with joint counsel and ordered Father to obtain separate counsel.[3]See In re S.A., 2001 UT App 308, ¶¶ 24-25, 37 P.3d 1172.
¶ 16 Second, the juvenile court agreed with the State that the adjudication hearing's purpose was to determine whether Mother's abuse of T.A. caused his death and whether S.A. was a sibling at risk.[4] The juvenile court concluded that Father was not a party to that phase of the proceeding and entered an order preventing Father's counsel from participating during the trial.
¶ 17 Father's exclusion from the adjudication phase affected both of his protected interests. First, as noted above, Father was given a Hobson's choice. The juvenile court's finding against Mother and finding S.A. to be a child at risk could and did result in the continued removal of S.A. from the home. However, Father could not participate in the proceedings that led to *1170 that determination. Second, although the State argued the proceedings could not affect Father's rights, the juvenile court made temporary custody determinations throughout the proceedings. Additionally, during the dispositional phase, the juvenile court determined the placement of S.A., relying in part on the adjudication proceedings. Therefore, Father had affected liberty interests.[5]

II. Risk of Deprivation of Father's Liberty Interests
¶ 18 We now turn to the second factor, which examines "`the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards.'" Smith, 431 U.S. at 848-49, 97 S.Ct. at 2112 (citation omitted). In the present case, the risk of the deprivation of Father's liberty interests is high. Section 78-3a-301 provides that DCFS may remove a child from his home in certain enumerated situations. See Utah Code Ann. § 78-3a-301(1) (Supp. 2000). Further, the juvenile court may, after the adjudication hearing, remove the child from the home and "vest legal custody of [the child] in the Division of Child and Family Services or any other appropriate person." Utah Code Ann. § 78-3a-118(g) (Supp.2000); see also Utah Code Ann. § 78-3a-311(1) (Supp.2000). In sum, depending on the evidence presented to the juvenile court, Father could lose custody of his son.
¶ 19 Father's risk was increased due to the juvenile court's order preventing him from presenting evidence. The juvenile court was required to find that the allegations that S.A. was a sibling at risk was supported by clear and convincing evidence. See Utah Code Ann. § 78-3a-310 (Supp.2000). A child is neglected, or, as phrased here, is a sibling at risk,[6] if he "is at risk of being a neglected or abused child . . . because another minor in the same home is a neglected or abused child." Utah Code Ann. § 78-3a-103(r)(i)(D) (Supp.2000).
¶ 20 Father, in conjunction with Mother, maintained the family home and necessarily had information relating to S.A.'s risk of abuse. "The role of the parents in contributing to the [child's] status is relevant in deciding the case on its merits . . . ." In re K.T.S., 925 P.2d 603, 605 (Utah Ct.App.1996) (per curiam). Further, Mother presented a theory to the trial court as to the cause of T.A.'s death, which included overly aggressive CPR. The facts demonstrate that CPR was administered in part by Father. However, Father was not given the opportunity to present evidence regarding this issue, nor was he allowed to cross-examine witnesses regarding either the abuse of T.A. or how S.A. was at risk in Father's home.
¶ 21 Finally, a dispositional hearing is held only after the relevant facts are adjudicated by the juvenile court. See Utah Code Ann. § 78-3a-310(1) (Supp.2000) ("If, at the adjudication hearing, the court finds by clear and convincing evidence, that the allegations contained in the petition are true, it shall conduct a dispositional hearing."). Accordingly, the dispositional phase is dependent on evidence presented to the juvenile court and its findings and conclusions drawn therefrom. The juvenile court then determines placement of the child and what reunification services, if any, are to be provided to the parents. See Utah Code Ann. § 78-3a-311 (Supp.2000). However, in the present case, Father participated in the dispositional portion of the juvenile proceedings without the opportunity to present evidence to the juvenile court prior to the juvenile court's removal of S.A. from Father's home. In sum, a high risk existed that Father's right to care for and retain custody of S.A. and, at the same time, maintain a marital home and *1171 relationship with Mother would be violated when Father was excluded from the adjudication hearing.
¶ 22 Father does not suggest any procedural or substitute safeguards, but argues the appropriate safeguards exist in his statutory right to representation. He argues these safeguards were denied when the trial court ordered his counsel not to participate. We agree.
¶ 23 Our legislature has mandated that certain specified persons have a statutory right to counsel in neglect and abuse proceedings. Section 78-3a-314 provides, in relevant part: "The parent . . . of a child who is the subject of a petition under this part has the right to be represented by counsel, and to present evidence at each hearing." Utah Code Ann. § 78-3a-314(4)(a) (Supp. 2000) (emphasis added). The Legislature further provided parents the right to counsel and, if necessary, appointed counsel.
The parents, guardian, custodian, and the minor, if competent, shall be informed that they have the right to be represented by counsel at every stage of the proceedings. They have the right to employ counsel of their own choice and if any of them requests an attorney and is found by the court to be indigent, counsel shall be appointed by the court.
Utah Code Ann. § 78-3a-913(1)(a) (Supp. 2000). "We note that [this] statute is found in the `Miscellaneous Provisions' section of the Juvenile Court Act. As such, the statute. . . applies to abuse, neglect, and dependency proceedings." In re W.B.J., 966 P.2d 295, 297 n. 2. (Utah Ct.App.1998) (citation omitted). "A fundamental rule of statutory construction is that statutes are to be construed according to their plain language." In re N.K.C., 1999 UT App 345, ¶ 9, 995 P.2d 1 (quotations and citation omitted). Because S.A. was the subject of the State's petition, both parents were entitled to representation, either by private or appointed counsel, and each parent should have been given the opportunity to present evidence to the juvenile court.
¶ 24 These statutes provide the procedural safeguards necessitated by due process to protect Father's protected liberty interests. Given the opportunity, Father may have presented evidence to the trial court refuting the finding that S.A. was a sibling at risk, or that he was able to protect S.A. His counsel could have insured that the trial court's findings reflected Father's interest in protecting S.A. and providing a safe home for the child. Finally, the juvenile court could have conducted the dispositional hearing with a full view of S.A.'s environment in the context of both parents. In sum, the safeguards provided by the Legislature would have eliminated the risk of depriving Father of his protected interests.

III. Governmental Interests and Burdens
¶ 25 Finally, we examine "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Smith, 431 U.S. at 849, 97 S.Ct. at 2112. The Legislature has recognized the importance of Father's interest in raising his child, see Utah Code Ann. § 62A-4A-201(1) (2000); however,
[i]t is also the public policy of this state that children have the right to protection from abuse and neglect, and that the state retains a compelling interest in investigating, prosecuting, and punishing abuse and neglect, as defined in this chapter, and in Title 78, Chapter 3a. Therefore, as a counterweight to parental rights, the state, as parens patriae, has an interest in and responsibility to protect children whose parents abuse them or do not adequately provide for their welfare. There are circumstances where a parent's conduct or condition is a substantial departure from the norm and the parent is unable or unwilling to render safe and proper parental care and protection. Under those circumstances, the welfare and protection of children is the consideration of paramount importance.

Id. at § 62A-4a-201(2) (emphasis added). Utah's appellate courts have echoed the State's paramount interest in the welfare of children who may be victims of abuse or neglect. See In re A.R., 1999 UT 43, ¶ 18, 982 P.2d 73; In re S.L., 1999 UT App 390, ¶ 42, 995 P.2d 17. In sum, the State's interest *1172 in S.A., a child potentially at risk of abuse or neglect, is of prime import.
¶ 26 With the State's interest firmly established, we examine the burdens placed on the State in providing adequate safeguards. First, the legislative enactments provide an administrative scheme designed to protect at risk children. See Utah Code Ann. §§ 78-3a-101 to -914 (1996 & Supp.2000). Second, the Legislature has provided a mechanism to fund the costs of court appointed counsel in cases where a parent is indigent. See id. at § 78-3a-913(1)(b). Additionally, we discern no appreciable burden on the State resulting from allowing a parent to participate fully in a child welfare proceeding involving his or her child, when that parent is not accused of any wrongdoing. To the contrary, such participation may provide the juvenile court with information that is helpful in promoting a child's welfare. Therefore, Father's participation would further the State's interest in S.A.'s well-being and not require substantial fiscal or administrative burdens.
¶ 27 After an examination of the three part test required by Smith, we conclude that Father's due process rights were violated. First, Father has a protected liberty interest in the care and custody of S.A., as well as an interest in maintaining a family relationship with Mother, and these interests were affected by the juvenile court proceedings. Second, the juvenile court order, which deprived Father of his ability to fully participate, created a risk of the deprivation of these rights. Procedural safeguards exist, including the right to counsel and the presentation of evidence, that would have eliminated the risk of due process violations. These safeguards are provided by statute and help ensure the due process required to protect Father's liberty interests. Third, although the State has a paramount interest in S.A.'s welfare, Father's interests require adequate safeguards that he was not provided. The provision of these safeguards presents no administrative or fiscal burden on the State, and as necessary protections, are in fact mandated by statute. Therefore, Father's due process rights were violated by the juvenile court. On remand the juvenile court shall conduct a new adjudication hearing allowing Father's counsel to represent him and allowing Father to present evidence relevant to the issues before the juvenile court.

CONCLUSION
¶ 28 We hold that Father has a protected liberty interest in the care and custody of S.A., as well as an interest in maintaining a martial relationship with Mother. Utah Code Ann. §§ 78-3a-314, -913 (Supp.2000) provide parents of children who are the subject of abuse or neglect petitions a statutory right to representation and the right to present evidence to the juvenile court. Father was denied these procedural safeguards, violating his due process rights. We therefore reverse the decision of the juvenile court. On remand the juvenile court is instructed to allow both parents to participate fully in the adjudication hearing in accordance with the opinion expressed herein.
¶ 29 WE CONCUR: NORMAN H, JACKSON, Associate Presiding Judge, and JUDITH M. BILLINGS, Judge.
NOTES
[1] The juvenile court conducted a dispositional hearing to determine S.A.'s placement and reunification with his parents. Both parents participated in this portion of the juvenile court proceedings and do not challenge the actions of the juvenile court during this phase.
[2] We note the Utah Constitution also provides due process protection to parents and families. See, e.g., In re J.P, 648 P.2d 1364, 1377 (Utah 1982) (concluding "that the Utah Constitution recognizes and protects inherent and retained right of a parent to maintain parental ties to his or her children under Article I, § 7 and § 25"). However, Father did not argue he was denied protections afforded him by the Utah Constitution, and we therefore restrict our analysis to the Federal Constitution.
[3] Mother also appealed this decision of the juvenile court. As we explain in that opinion, the trial court acted properly when it ordered Father to obtain separate counsel. See In re S.A., 2001 UT App 308, ¶¶ 24-28, 37 P.3d 1172.
[4] We express concern regarding the State's possibly inconsistent actions. Father was not found responsible for T.A.'s death and the State never asserted that he was responsible during the adjudication hearing. However, prior to the adjudication hearing, Father received notice from DCFS of a substantiated finding that he had failed to protect S.A.
[5] Because Father had an interest in the juvenile court proceedings, and that interest was adverse to that of the State and the Guardian ad Litem who wished to remove S.A. from the home, he had standing below and has standing on appeal. See In re M.W., 2000 UT 79, ¶ 12, 12 P.3d 80. We also note that Utah Code Ann. § 78-3a-314 (Supp.2000), which is discussed below, implicitly provides party status to parents in neglect and abuse proceedings. See Utah Code Ann. § 78-3a-314(4)(a) (Supp.2000) ("The parent or guardian of a child who is the subject of a petition under this part has the right to be represented by counsel, and to present evidence at each hearing.").
[6] The Utah Code includes at risk children within its definition of a "Neglected child." See Utah Code Ann. § 78-3a-103(r)(i)(D) (Supp.2000).