2002 UT App 16

**AMERICAN INTERSTATE MORTGAGE CORPORATION, a nonresident corporation, Plaintiff, Appellant, and Cross-appellee,**

v.

**James EDWARDS, et al., Defendants, Appellee, and Cross-appellant.**

No. 20001004–CA.

Court of Appeals of Utah.

Jan. 25, 2002.

---

David Jordan and Jill M. Pohlman, Stoel Rives LLP, Salt Lake City, for Appellant.

David J. Knowlton and Denise P. Larkin, Ogden, for Appellee.

Before Judges DAVIS, GREENWOOD, and THORNE.

OPINION

GREENWOOD, Judge.

¶ 1 American Interstate Mortgage (AIM) initiated this action to foreclose on certain real property (the Property) located in Weber County, Utah. James and Helen Edwards (the Edwardses) held title to the Property pursuant to a sheriff's sale, subject to a Deed of Trust (the Deed) and a Note (the Note) held by AIM. The estate of James Edwards (the Estate) succeeded to the Edwardses' title. The trial court determined that AIM

could foreclose on the Property. The trial court also ordered that AIM's attorney fees incurred in this foreclosure action and a previous case were to be added to the principal due under the Note. The trial court refused to allow AIM to present evidence regarding a portion of its claimed attorney fees. AIM appeals the trial court's exclusion of the attorney fees evidence. AIM also challenges the Estate's standing before the trial court and on appeal. The Estate cross-appeals, challenging the trial court's order allowing attorney fees from the earlier action and the trial court's order foreclosing the Property. We affirm.

## BACKGROUND

¶ 2 On August 28, 1981, James and Beverly Rothey, as trustors, and Mountain West Savings & Loan (Mountain West), as beneficiary, executed the Deed and Note in relation to the Property. Later, Michael Flynn assumed the rights and obligations of the Rotheys and Mountain West assigned its rights to AIM. In July 1992, a civil judgment was entered against Flynn. A writ of execution was entered, resulting in a sheriff's sale of the Property. Judgment Collection Systems successfully bid on the Property and assigned its interest in the Property to the Edwardses. The Edwardses then leased the Property to their son, Bruce Edwards, who remains in·possession of the Property. The Edwardses never assumed the rights or obligations of Flynn under the Note or Deed. The Edwardses are both deceased, and the Estate of James Edwards is now the real party in interest, with Bruce Edwards acting as the personal representative of his father's estate.[1] The Estate is the only remaining defendant, as all other defendants have disclaimed their interest in the Property or have been dismissed by the trial court.

¶ 3 After the sheriff's sale, Bruce Edwards contacted AIM and paid the arrearage due under the Note. He made payments to AIM until the summer of 1993, when a dispute arose between Bruce Edwards and AIM regarding missing payments and late fees. AIM demanded payment and threatened

foreclosure on the Property. Bruce Edwards commenced a suit against AIM in 1994 (the 1994 Action) seeking to enjoin non-judicial foreclosure of the Property. AIM counterclaimed, seeking attorney fees and foreclosure of the Property. The trial court in the 1994 Action granted Bruce Edwards's motion for a restraining order and ordered him to pay the missing payments to AIM. The trial court entered its Decision in early 1998. The Decision did not award attorney fees to AIM. Further, the Decision stated that Bruce Edwards was a party to that action because he had an interest as the possessor of the property, not under the Note or Deed, because he had no privity under either. Neither party appealed from the Decision in the 1994 Action.

¶ 4 In the present case, no payments were made on the Note after January 1998. AIM sent a notice to Flynn, demanding ten months of payments to cure the default as well as $19,930.20 in attorney fees it incurred in the 1994 Action. AIM also sent the notice to Bruce Edwards. Bruce Edwards tendered payment of $7,006.50 for the missing payments, but refused to pay the demanded attorney fees. AIM did not cash the check and it was later returned to Bruce Edwards. In October of 1998, AIM filed suit seeking foreclosure, naming Bruce Edwards as a defendant. Bruce Edwards filed a motion for dismissal or summary judgment seeking, among other things, to prevent AIM from recovering attorney fees denied in the 1994 Action. The trial court denied the motion, but held that AIM could not recover the fees from the prior litigation as they were now barred by res judicata.

¶ 5 The trial court also ordered that James and Helen Edwards be joined as defendants in the action. AIM amended its complaint accordingly and Bruce Edwards was dismissed from the action. The trial court later ruled that the attorney fees claim from the 1994 Action could be raised against the Edwardses as they were not parties to the previous action.

---

1. Because James Edwards passed away during the pendency of this appeal, the trial court refers to the Edwardses throughout its orders. Therefore, our opinion at times refers to the Edwards-

es when discussing actions occurring before the trial court, and at times refers to the Estate, which assumed the Edwardses' interests in the Property.

¶ 6 In July 1999, the Edwardses served AIM with interrogatories and requests for document production. Document Request number 7 requested all "time slips, billings, and payment records ... relating to the ... prosecution of the present legal action." Request number 8 sought "[a]ll documents that [AIM] and his counsel intend to introduce into evidence at the trial of the matter, not previously furnished to [Edwardses] as part of the court's order compelling discovery." AIM responded to both requests as follows: "All documents responsive to this request will be produced for inspection and copying at a mutually convenient time and place." AIM included with its written answers copies of the billing records that had been created to date by the Durbano law firm (Durbano) [2] relating to this matter. At no time did the Edwardses or their counsel request to inspect or copy any additional documents. The trial court would not allow AIM's counsel to introduce Durbano billing records generated between July 1999 through June 2000 that had not been previously provided to the Edwardses. The trial court, relying on Rule 26 of the Utah Rules of Civil Procedure, refused to allow evidence of $11,456.95 in attorney fees, holding that AIM did not properly supplement its discovery responses. No order was in place requiring the parties to supplement their discovery responses, but the trial court relied on Rule 26's specification of an ongoing duty to provide information.

¶ 7 Based on the Deed language, the trial court ordered that the fees incurred by AIM in the 1994 Action be added to the principal due under the Note in the amount of $17,346.25 plus interest at 7.75% from January 28, 1998. From the evidence it allowed AIM to present, the trial court found that $9,788.41 in attorney fees was incurred by AIM in the present action. The trial court denied $1000.00 in fees incurred by AIM in its motion to reconsider the trial court's decision excluding the additional attorney fees.

¶ 8 Consequently, the trial court awarded AIM attorney fees of $22,163.25 from the 1994 Action and $12,488.41 for the present action and ordered that AIM could foreclose on the Property. The fees awarded were included as indebtedness on the Note and

Deed, to be recovered if proceeds from foreclosure of the Property were adequate. The trial court did not award, nor did AIM seek, any money judgment against the Edwardses or the Estate.

¶ 9 AIM appeals the trial court decision denying the $11,456.95 in Durbano attorney fees, which the trial court excluded from evidence. AIM also claims the Estate lacked standing to contest AIM's rights to attorney fees or to foreclose before the trial court and on appeal. The Estate cross-appeals the order of the trial court allowing attorney fees from the 1994 Action and the decision of the trial court allowing the foreclosure to proceed.

## ISSUES AND STANDARDS OF REVIEW

¶ 10 AIM argues the trial court erred in excluding evidence of part of Durbano's billing statements because AIM did not supplement its discovery requests. "Trial courts have 'broad discretion in selecting and imposing sanctions for discovery violations....'" *Tuck v. Godfrey*, 1999 UT App 127,¶ 15, 981 P.2d 407 (quoting *Preston & Chambers, P.C. v. Koller*, 943 P.2d 260, 262 (Utah Ct.App.1997)). However, "'the proper interpretation of a rule of procedure is a question of law, and we review the trial court's decision for correctness.'" *State v. Spry*, 2001 UT App 75,¶ 8, 21 P.3d 675 (quoting *Ostler v. Buhler*, 1999 UT 99,¶ 5, 989 P.2d 1073). AIM also asks that if this court reverses the trial court order regarding the Durbano fees, that this court award it attorney fees incurred in AIM's motion to reconsider.

¶ 11 AIM also argues on appeal that the Estate lacks standing to appeal or oppose its appeal, asserting that because the Estate has no privity of contract with AIM it cannot rely on the contractual provisions contained in the Deed and Note. "Standing is ... a question of law reviewed for correctness." *In re S.A.*, 2001 UT App 307,¶ 8, 432 Utah Adv. Rep. 21, 37 P.3d 1166.

¶ 12 The Estate cross-appeals. It first argues that AIM did not follow the notice provision as specified in the Note,

2. Durbano represented AIM throughout the trial proceedings.

which is a prerequisite to foreclosure. The Estate argues the Edwardses were entitled to proper notice with an opportunity to cure any default, and that the notice was defective because it claimed attorney fees AIM incurred in the 1994 Action. The Estate also argues the Edwardses were not given proper notice of the 1994 Action. "If a trial court interprets the plain language of a written contract as a matter of law, 'we accord its construction no particular weight and review its actions under a correction-of-error standard.'" *Embassy Group v. Hatch*, 865 P.2d 1366, 1369 (Utah Ct.App.1993).

¶ 13 The Estate also contends AIM is not entitled to attorney fees resulting from the first action because such an award violates principles of res judicata. "The trial court's decision to award attorney fees ... and deny fees ... are questions of law which we review for correctness." *Keith Jorgensen's, Inc. v. Ogden City Mall Co.*, 2001 UT App. 128, ¶ 11, 26 P.3d 872. "The application of res judicata or collateral estoppel is a question of law, reviewed for correctness." *In re S.A.*, 2001 UT App 308, ¶ 16, 432 Utah Adv. Rep. 17, 37 P.3d 1172.

## ANALYSIS

### EXCLUSION OF ATTORNEY FEE EVIDENCE

¶ 14 AIM argues that the trial court improperly excluded its evidence of a portion of the fees incurred by Durbano. AIM first argues its response to the Edwardses' discovery requests was appropriate under Rule 34 of the Utah Rules of Civil Procedure, which states in part: "The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested...." Utah R. Civ. P. 34(b)(2). AIM argues its response—"All documents responsive to this request will be produced for inspection and copying at a mutually convenient time and place"—complied with Rule 34. AIM concludes that because the Edwardses did not request production, AIM satisfied its burden.

¶ 15 AIM also argues that the trial court improperly applied Rule 26. AIM argues that the pre-amended version of Rule 26 applies to the conduct of this action. *See* Utah R. Civ. P. 26 (2000), Advisory Committee Notes ("The Supreme Court order approving the amendments directed that the new procedures be applicable only to cases filed on or after November 1, 1999."). Under the pre-amended version of Rule 26, AIM argues its responses were complete when made and supplemental information was made available subject to the Edwardses requesting it; thus, AIM had no duty to supplement its responses.

¶ 16 The Estate counters that the trial court acted within its discretion, citing a discovery order of the trial court and the specific language of requests for documents. The Estate also argues the amended version of Rule 26 applies because AIM did not raise the issue below regarding the pre-amended rule and the amended version contains a duty to supplement. Further, the Estate argues the trial court properly excluded the evidence under the previous version of the rule. We agree with the Estate that the trial court ruling was proper under either version of the rule.

¶ 17 We begin by setting out the portions of both versions of Rule 26, which address a party's duty to supplement discovery responses. The pre-amended version of Rule 26 states:

A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired except as follows:

(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity of each person to be called as an expert witness at trial....

(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (A) he knows that the response was incorrect when made, or (B) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses.

Utah R. Civ. P. 26(e) (1999 version, prior to amendments of November 1, 1999). The amended version states:

A party who has made a disclosure under Subdivision (a) or responded to a request for discovery with a response is under a duty to supplement the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances:

(1) A party is under a duty to supplement at appropriate intervals disclosures under Subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. . . .

(2) A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Utah R. Civ. P. 26(e) (2000).

¶ 18 The trial court did not specify which version of Rule 26 it relied upon when it ruled. However, most likely the trial court relied on the amended version. Under this version, it is clear that AIM had a duty to supplement its responses. The Edwardses' first request for production of documents requested that AIM produce "[c]opies of all documents or other items that [AIM] intends to introduce into evidence upon the trial of the above entitled matter." AIM's response stated: "1. [AIM] has not yet designated documents for trial. Any and all documents which [AIM] intends to introduce into evidence will be timely produced prior to trial." AIM also delivered some Durbano billing statements, documenting expenses up to July 1999. Because the fees incurred by AIM were ongoing, its initial response would become "incomplete" as AIM incurred addition-

al attorney fees, and, under the amended version of the Rule, AIM had a "duty seasonably to amend [its] prior response." Utah R. Civ. P. 26(e)(2) (2000). Therefore, under the amended version of Rule 26 the trial court acted within its discretion in excluding evidence of attorney fees incurred after July 1999.

¶ 19 AIM, however, argues that if the trial court applied the amended version of Rule 26, it erred because that version of the rule did not control in the present action. We first note that AIM argued before the trial court only that it had no duty to supplement. AIM did not raise the issue before the trial court as to which version of the rule the trial court should apply. "In the absence of exceptional circumstances, this Court has long refused to review matters raised for the first time on appeal where no timely and proper objection was made in the trial court." *State v. Steggell*, 660 P.2d 252, 254 (Utah 1983).

¶ 20 In its reply brief, AIM, for the first time, argues that if the trial court relied on the amended version of Rule 26, that reliance amounted to plain error. However, "[B]ecause [AIM] did not properly raise the[ ] . . . issue[ ] in the trial court, and thereby preserve [it] for appellate review, and because [AIM] argued plain error . . . for the first time in [its] reply brief, we [could] decline to review [the issue]." *Coleman v. Stevens*, 2000 UT 98,¶ 9, 17 P.3d 1122. This court, therefore, could affirm the decision of the trial court based on its reliance on the amended rule and AIM's failure to properly preserve the argument below or properly raise it on appeal.

¶ 21 However, because there is some ambiguity as to which version of the rule the trial court relied on, we also address the earlier version of Rule 26. The Edwardses, unsatisfied with AIM's responses to discovery, filed a motion to compel, resulting in an order which stated in part:

IT IS FURTHER ADJUDGED, ORDERED, AND DECREED that the plaintiff shall be and is hereby ordered to fully answer and comply with the defendant's Request for Production of Documents and

Interrogatories served by defendant Edwards on or about the 9th of April, 1999, in the above matter. Specifically, the plaintiff shall answer and comply with paragraph[ ] 1. . . .

The trial court also struck the trial date and ordered that no new date would be put in place until the discovery was completed "consistent with this order." The order set a discovery cut-off date of July 30, 1999.

¶ 22 As noted above, "[t]rial courts have 'broad discretion in selecting and imposing sanctions for discovery violations. . . .' " *Tuck v. Godfrey*, 1999 UT App 127, ¶ 15, 981 P.2d 407 (citation omitted). Here, AIM's responses were varied and contradictory, at times promising to produce documents once identified and at other times offering the Edwardses an opportunity to examine documents at a mutually convenient time and place; without identifying what documents the Edwardses were entitled to inspect. However, an examination of the trial court's order and the Edwardses' requests convince us that AIM had a duty to properly supplement the Edwardses with all documents that would be introduced at trial, once identified by AIM. The order on the motion to compel, instructing AIM to comply with specific discovery requests imposed this duty under the earlier version of the Rule. *See* Utah R. Civ. P. 26(e)(3)(amended 1999) ("A duty to supplement responses *may be imposed by order of the court,* agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses." (emphasis added)).

¶ 23 Therefore, the trial court did not abuse its discretion when it excluded AIM's evidence of attorney fees incurred after July 1999. Further, because we find no abuse of discretion, the trial court also properly denied AIM's request for additional attorney fees it incurred presenting its motion for reconsideration.

## STANDING

¶ 24 AIM argues that the Estate has no standing to oppose AIM's appeal and that the Edwardses had no standing below. AIM argues that the Estate lacks standing because the Edwardses never assumed the obligations of the Note or Deed, nor were they signatories to either document. AIM relies on *Garland v. Fleischmann*, 831 P.2d 107, 109 (Utah 1992), which held that a party not in privity of contract could not raise defenses arising from the contract. *See also Johnston v. Austin*, 748 P.2d 1084, 1090 (Utah 1988) (holding that "the plaintiffs ha[d] no legal duty under the contract to provide the subpurchasers with written notice of acceleration as required by . . . the contract" when the subpurchasers had no privity of contract with plaintiffs).

¶ 25 The Estate argues it has standing to attack any debt on the Property because the Edwardses held a sheriff's deed for the Property. We agree. Utah case law has long recognized substantive rights vesting in those who purchase property at sheriff's sales. In *Clawson v. Moesser*, the supreme court stated: "There can be no difference in the interest of one who loses his land to a judgment creditor on execution and one who voluntarily parts with his title by deed." 535 P.2d 77, 78 (Utah 1975). *See George Thatcher Corp. v. Bullen*, 107 Utah 310, 153 P.2d 655, 664 (1944) (Wade, J., concurring in the result) ("Prior to the sale plaintiff, as purchaser under the sheriff's sale on his judgment, had been substituted for and had acquired all of the right, title, interest and claim of the defendant in and to this property, thus, as between plaintiff and defendant, plaintiff was the sole owner thereof and defendant had no interest therein, and by this redemption they were restored to their former estates."); *Local Realty Co. v. Lindquist*, 96 Utah 297, 85 P.2d 770, 772 (1938) ("[W]hen the sale is consummated and completed, the purchaser is subrogated to and acquires all the right, title, interest, and claim of the judgment debtor in and to the property."); *see also Spalding v. Allred*, 23 Utah 354, 64 P. 1100, 1102 (1901). Finally, and more recently, the Utah Supreme Court stated: "It is clear that the right of a purchaser at a sheriff's sale either to receive the proper redemption amount in accordance with Rule 69(f) *or to have the title perfected at the end of the six-month period is a substantive right.*" *Huston v. Lewis*, 818 P.2d 531, 535 (Utah 1991) (emphasis added).

¶ 26 Utah's rules of civil procedure incorporate these substantive rights. Specifically,

Rule 69 states: "Upon a sale of real property the officer shall give the purchaser a certificate of sale containing: ... (D) a statement to the effect that all right, title, interest and claim of the judgment debtor in and to the property is conveyed to the purchaser." Utah R. Civ. P. 69(i)(7). In the present case, the Edwardses' sheriff's deed contains the quoted language from Rule 69(i)(7)(D) and specifically grants all rights previously held by Flynn to the Edwardses.

¶ 27 In sum, AIM is correct that the Edwardses' standing does not stem from the Note or Deed. The Estate cannot enforce the terms of these contracts, nor can it be held accountable for Flynn's debt under the Note. *See Garland,* 831 P.2d at 109; *Johnston,* 748 P.2d at 1090. However, the Estate does succeed to the title held by Flynn and all rights that accompany that title, subject to the interest held by AIM. Additionally, because the Estate "claims an interest relating to the [P]roperty ... which is the subject of the [foreclosure] action," Utah R. Civ. P. 24(a), it could have intervened as a matter of right in the present suit, and the trial court properly ordered that the Edwardses be joined as defendants. It therefore follows that the Estate can contest the amount of the lien on the Property claimed by AIM pursuant to the Deed and Note, including the appropriate attorney fees, as a party having an ownership interest in the Property; albeit one that is subordinate to that of AIM. Having determined that the Estate has standing, we turn to the arguments raised by the Estate in its cross-appeal.

## ENTITLEMENT TO PROPER NOTICE

¶ 28 The Estate's first argument relates to the notice provision of the Note. The Estate argues that foreclosure is not available to AIM until proper notice is given with the opportunity to cure. Edwards relies on the following language contained in the Note:

6. BORROWER'S FAILURE TO PAY AS REQUIRED

(B) Notice from the Note Holder

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 30 days after the date on which the notice is mailed to me.

(C) Default

If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

The Estate argues that this language requires proper notice as a precondition to accelerating the maturity of the Note. The Estate asserts that the notice in this case was improper as it contained a demand for the attorney fees not awarded, but claimed, in the 1994 Action. Accordingly, the Estate argues the notice, by claiming amounts not properly due, was materially defective.

¶ 29 The Estate also relies on paragraph 7 of the Deed, which states:

7. Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, including but not limited to eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankruptcy or decedent, then Lender at Lender's option *upon notice to the Borrower,* may make such appearances, disburse such sums and take such action as is necessary to protect Lender's interest, including, but not limited to, disbursement of reasonable attorney's fees....

(Emphasis added). Again, the Estate argues that the emphasized language required AIM to give notice in the 1994 Action prior to claiming attorney fees. The Estate concludes that since AIM failed to comply with this language, it cannot claim the attorney fees in this action.

¶ 30 However, the Estate's claim of error fails because the Estate lacks privity with AIM.[3] The Note and Deed notice provisions

---

**3.** We note that as to any notice sent in the 1994 Action and the attorney fees incurred therein, the

Edwardses cannot claim error. We have no

cited above apply only to the "Borrower," in this case Flynn, who remains the responsible party on the Note. The trial court correctly found that:

> Neither James, Helen or Bruce Edwards . . . ever assumed the Note and Deed of Trust, or attempted to assume the Note and Deed of Trust. Since they did not assume the Note and Deed of Trust, the Edwards did not become the "Borrower" under the Note and Deed of Trust, and are unable to claim or enforce the rights which the Note and Deed of Trust grant exclusively to the Borrower, including the right to notice beyond what is required by law.

Therefore, the Edwardses cannot rely on the notice provisions of the Deed or Note in order to attack the trial court's orders. *See Garland v. Fleischmann*, 831 P.2d 107, 109 (Utah 1992); *Johnston v. Austin*, 748 P.2d 1084, 1090 (Utah 1988). Again, the Edwardses were properly joined as owners of the Property pursuant to the sheriff's deed and can attack the trial court orders only in that capacity.

## ATTORNEY FEES FROM THE 1994 ACTION

¶ 31 The Estate argues that AIM cannot claim the attorney fees it incurred in the 1994 Action because AIM is barred by res judicata. AIM, however, argues that the fees from the 1994 Action were properly awarded in this action and the necessary elements of res judicata are not met. AIM argues that in the previous case the issue before the court was whether AIM was entitled to the fees as against Bruce Edwards, and in the present case it asked the court to determine if it could add the incurred fees to the indebtedness on the Property as these attorney fees were incurred in defense of AIM's interest in the Property.

¶ 32 Res judicata has two branches: claim preclusion and issue preclusion, also referred to as collateral estoppel. *See Macris & Assoc., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 19, 16 P.3d 1214. The two branches differ in that

"claim preclusion applies to *whole claims*, whether litigated or not," and prevents parties from relitigating the same claim in a second suit, . . . issue preclusion, or collateral estoppel, arises from a different cause of action and prevents parties or their privies from relitigating "particular *issues* that have been contested and resolved."

*Id.* at ¶ 34 (citations omitted). The Estate relies on issue preclusion to bar AIM's claim to fees incurred in the 1994 Action. The supreme court has designated the following four-part test for determining if issue preclusion applies:

> "First, the issue challenged must be identical in the previous action and in the case at hand. Second, the issue must have been decided in a final judgment on the merits in the previous action. Third, the issue must have been competently, fully, and fairly litigated in the previous action. Fourth, the party against whom collateral estoppel is invoked in the current action must have been either a party or privy to a party in the previous action."

*Id.* at ¶ 37 (quoting *Jones, Waldo, Holbrook & McDonough v. Dawson*, 923 P.2d 1366, 1370 (Utah 1996)). The *Macris* court also stated that "if an issue is actually raised by proper pleadings *and treated as an issue in a case*, it is conclusively determined by the first judgment." 2000 UT 93 at ¶ 40, 16 P.3d 1214 (emphasis added).

¶ 33 We have carefully examined the record provided by the parties in this case. Apparently, both parties agree that AIM requested attorney fees in the 1994 Action and no fees were awarded. Although the file from the 1994 Action was present at trial and referred to by counsel, our record includes only the Decision from the 1994 Action, which contained the following language regarding an award of costs: "[AIM] is not entitled to recover late fees and interest on the past due amount. . . . It would be grossly unfair to require Mr. [Bruce] Edwards to pay penalties and interest when the demands

record regarding the 1994 Action beyond the judgment of the trial court in that case. In the absence of "an adequate record, we must assume the regularity of the proceedings below." *Go-*

*rostieta v. Parkinson*, 2000 UT 99, ¶ 16, 17 P.3d 1110. We therefore must presume AIM properly notified Flynn under the Deed and Note provisions in the 1994 Action.

made upon him were so highly contradictory of each other and inconsistent." The Decision did not address the attorney fee request, nor did it address the status of any party other than Bruce Edwards. The Decision begins by stating,

> The issue before the court essentially is what is the current status of payments on the mortgage held by [AIM].... Furthermore, ... it is this Court's conclusion that there does not exist privity of contract between the parties such that Mr. [Bruce] Edwards can make demands on the mortgage company pursuant to the trust deed note, nor can the mortgage company make demands on Mr.[Bruce] Edwards to perform under the trust deed and note.

AIM contends that it sought attorney fees in the 1994 Action against Bruce Edwards, rather than as an additional charge under the Deed, as it does in this action. Based on the Decision's language, we conclude that in whatever context the issue of attorney fees arose, the trial court did not treat fees as an issue in the case and determined only the payments owed.[4] Furthermore, the trial court in the instant case heard testimony as to the fees incurred in the 1994 Action and had before it supporting documentation regarding those fees. The trial court specifically found that the fees were reasonably incurred in the 1994 Action.

¶ 34 Because the Decision in the 1994 Action did not address nor decide the issue of attorney fees, the Estate's res judicata argument fails.[5] Therefore, res judicata did not bar AIM's claim for the 1994 Action attorney fees in this action.

¶ 35 In sum, the Edwardses cannot attack the attorney fee award on the basis that the notice was improper because they lack privity of contract; nor can the Edwardses attack the awarded fees from the 1994 Action on grounds that it was barred by res judicata. Therefore, AIM is entitled to all attorney fees incurred in the 1994 Action and the

instant case, as awarded by the trial court, if the Deed or Note provides a contractual basis for the award. *See Dixie State Bank v. Bracken,* 764 P.2d 985, 988 (Utah 1988) ("In Utah, attorney fees are awardable only if authorized by statute or by contract."). Paragraph 7 of the Deed allows the Lender to defend any actions and states:

> [I]f any action or proceeding is commenced which materially affects Lender's interest in the Property ... then Lender ... may make such appearances, disburse such sums and take such action as is necessary to protect Lender's interest, including, but not limited to disbursement of reasonable attorney fees.... Any amounts disbursed by Lender pursuant to this paragraph 7 with interest thereon, shall become additional indebtedness of Borrower secured by this Deed of Trust.

¶ 36 Further, paragraph 18 of the Deed states: "Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorney's fees." The trial court concluded correctly that the Deed "allow[ed] AIM], as Lender, to disburse sums and take such actions as necessary to protect the Lender's interests, including but not limited to attorney's fees, and to include any amounts disbursed, with interest thereon, as additional indebtedness secured by the Deed of Trust."

¶ 37 The Estate made no argument to the trial court that AIM did not necessarily incur its fees in the 1994 Action to protect its interest in the Property, nor did the Estate argue below or on appeal that in either action the claimed attorney fees were not reasonable, but rather argued only that collateral estoppel and failure to comply with the notice provision prevented a claim for attorney fees. The trial court found the fees to be reasonable and therefore properly awarded AIM's

---

4. The Estate seems to argue that the trial court in the 1994 Action denied AIM attorney fees because of some fault of AIM and/or for the reasons it declined to award costs to AIM. However, the record before us does not contain anything to support that contention.

5. The Estate argues in its brief that equitable estoppel also bars recovery of the 1994 Action attorney fees. However, this issue was not preserved before the trial court and the Estate provides no meaningful analysis on appeal. We therefore do not consider this argument. *See State v. Horton,* 848 P.2d 708, 711 (Utah Ct.App. 1993).

attorney fees incurred in the 1994 Action and added them to the amount due under the Note and Deed.

## ATTORNEY FEES ON APPEAL

¶ 38 Finally, AIM requests that it be awarded its attorney fees on appeal. "When a party who received attorney fees below prevails on appeal, 'the party is also entitled to fees reasonably incurred on appeal.'" *Pack v. Case*, 30 P.3d 436, 2001 UT App 232, ¶ 39, 426 Utah Adv. Rep. 20 (quoting *Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998)). AIM's argument regarding the Edwardses' standing to challenge the attorney fees fails, as does its argument regarding the trial court's exclusion of attorney fee evidence. However, AIM successfully defends the trial court's award of fees from the 1994 Action and the trial court's order of foreclosure. Accordingly, we remand to the trial court to determine attorney fees reasonably incurred by AIM regarding only those portions of this appeal. Those fees will be an additional indebtedness under the Note and Deed.

## CONCLUSION

¶ 39 The trial court acted within its discretion in excluding evidence of AIM's attorney fees incurred after July 1999 because AIM failed to properly supplement discovery regarding documents it intended to introduce at trial. The Estate has standing to challenge the attorney fees award and the foreclosure because it was the holder of a sheriff's deed and therefore had an ownership interest in the Property. However, the Estate lacks privity of contract with AIM and therefore cannot argue defective notice of foreclosure as barring the attorney fees award or the trial court's order of foreclosure. Res judicata does not bar AIM's claim for fees incurred in the 1994 Action. AIM is entitled to attorney fees incurred in this appeal in so far as it prevailed, to be included in the amount secured by the Deed.

¶ 40 Accordingly, the order of the trial court is affirmed. We remand to the trial court on the issue of attorney fees incurred on appeal to be awarded to AIM.

WE CONCUR: JAMES Z. DAVIS, Judge and WILLIAM A. THORNE, JR., Judge.